[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12518

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 4, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00388-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EARL ROBERT WADE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 4, 2006)**

Before BIRCH, CARNES and BRUNETTI,* Circuit Judges.

CARNES, Circuit Judge:

---

* Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Earl Robert Wade appeals his sentence of 235 months imprisonment for possession of a firearm while a convicted felon in violation of 18 U.S.C. § 922(g) and § 924(e). Seeking to have us vacate his sentence, Wade raises issues relating to the armed career criminal provisions of § 924(e) and United States Sentencing Guidelines § 4B1.4 (Nov. 2004), about the U.S.S.G. § 3E1.1 reduction for acceptance of responsibility, and about whether the district court understood the difference between departing as part of the guidelines determination and going outside the guidelines range as authorized by United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

## I.

On December 19, 2003, City of Atlanta police arrested Wade, a convicted felon, for possession of a firearm on that date. Following his release from custody, Atlanta police arrested him on May 12, 2004 for possession of a different firearm on that date. Those were state offenses. No federal charges were brought against Wade for that conduct until July 27, 2004, when he was indicted on two counts of possession of a firearm as a convicted felon in violation of § 922(g) and § 924(e). The first count was based on the December 2003 offense and the second count was based on the May 2004 one. Wade pleaded guilty to the first count on November

4, 2004. The district court, upon motion of the government, dismissed the second count.

The pre-sentence investigation report (PSI) indicated that under U.S.S.G. § 2K2.1(a)(2), a base offense level of 24 applied because Wade had committed the offense "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." It recommended a four-level § 2K2.1(b)(5) increase because Wade possessed the firearm in connection with a felony offense, possession of crack cocaine.

The PSI also indicated that Wade was an armed career criminal within the meaning of U.S.S.G. § 4B1.4 because he had been convicted of a violation of § 924(e) and of three or more prior violent felonies or serious drug offenses. Wade's previous convictions were for: (1) attempted burglary; (2) burglary; (3) possession of cocaine; and (4) possession of marijuana. With respect to the attempted burglary conviction, which was the result of a plea, the PSI reported that according to "Court documents" Wade had attempted to kick in the door of a residence. Based on Wade's status as an armed career criminal, the PSI recommended that his offense level be increased from 28 to 33 pursuant to § 4B1.4(b)(3)(B).

3

Notwithstanding Wade's guilty plea, the PSI recommended that he not be given a § 3E1.1 reduction in his offense level for acceptance of responsibility. The reason was that after Wade's initial arrest for possession of a firearm, he had resumed criminal activity by committing the same offense several months later. Considering all the circumstances, the PSI concluded that Wade's repetition of criminal conduct outweighed any contrition he may have shown in his guilty plea. See U.S.S.G. § 3E1.1, cmt. n.3. The result was an adjusted offense level of 33 and a criminal history category of VI, which meant a guidelines range of 235 to 293 months imprisonment; the statutory mandatory minimum sentence was 15 years (180 months), however the PSI noted that "a ten-year statutory minimum was on record at the time of the plea."

In his written response to the PSI, Wade made three objections. First, he objected to application of the Armed Career Criminal Act (ACCA) but only on the basis that "attempted burglary cannot be used as a predicate offense under the definition used [in] 18 U.S.C. § 924(e)." That objection focused on attempted burglary as a category of crime; it did not dispute the PSI's allegation that state "Court documents" established that Wade had been convicted of the crime as a result of attempting to kick in the door of a residence and commit a theft inside.

Second, Wade objected under <u>Booker</u> and <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004), to the use of any of his three prior convictions because they were not listed in the indictment. Finally, Wade objected to the PSI's recommendation that he be denied a three-level reduction for acceptance of responsibility based on conduct that occurred months before the federal indictment was filed. He argued that the logical result of ruling out an acceptance of responsibility reduction for him is that he would never be able to receive one even though he came to court, acknowledged his culpability, and accepted responsibility for the offense.

At the March 4, 2005 sentencing hearing, Wade reiterated his objections. Wade contended that no Georgia attempted burglary conviction can serve as a predicate offense for an ACCA conviction. When the district court pointed out that the crime involved Wade attempting to kick the door in, Wade did not dispute that. Nor did he voice any disagreement with the prosecutor's statement that "in this case the defendant attempted to kick the person's door." In overruling Wade's objection, the district court acknowledged the general concerns about use of attempted burglary convictions for ACCA purposes but explained, "when he's trying to kick in the door, [that] presents conduct which is narrow and offers the potential for violence." Wade made no protest about the court's characterization

5

of the actual facts underlying the conviction nor did he question the source of those facts.

Wade also objected at the sentence hearing to not receiving a reduction for acceptance of responsibility. In rejecting Wade's position on that, the district court explained that the purpose of the reduction is to treat defendants who had realized the error of their ways and reformed more favorably than those whose actions show no change of attitude. The court determined that Wade was not entitled to the reduction because even though his arrest had put him on notice that his possession of a firearm was wrong, he possessed another firearm five months later.

The court found that Wade was an armed career criminal and was not entitled to a reduction for acceptance of responsibility. That resulted in an offense level of 33, and with Wade's criminal history category of VI, the court calculated the guidelines range at 235 to 293 months. It also recognized that the applicable statutory mandatory minimum sentence was fifteen years. Wade argued that the mandatory minimum was "extremely harsh" and "more than sufficient," and requested that he be given that minimum sentence.

The court responded that although it believed the guidelines sentence was "unnecessary for any of the purposes set out in the statute, . . . I do not have a

6

reason to depart based on my opinion that the sentence is excessive." The court continued: "I find that I would [depart], if I were free to, but I have not been given a reason nor can I think of a reason to depart solely because I think the sentence is excessive in this case." The court stated that the fact that Wade was "a twenty-two year-old young man who had a hard life" was not a sufficient "reason to depart" because "[o]therwise I would have to depart and deviate in virtually every case I get." The court sentenced Wade to 235 months imprisonment, the bottom of the guidelines range. At that point he objected that the sentence was unreasonable. This appeal followed.

## II.

Section 4B1.4(a) of the guidelines provides that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." U.S.S.G. § 4B1.4(a). Application of that statutory provision, the Armed Career Criminal Act, requires a finding that the defendant who has violated § 922(g) has three previous convictions for a violent felony or serious drug offense. 18 U.S.C. § 924(e)(1). The term "violent felony" is defined in the ACCA as any crime that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; . . . .

§ 924(e)(2)(B)(i)–(ii). This matters to the calculation of a guidelines sentence in this case because § 4B1.4(a) of the guidelines effectively incorporates by reference the definition of "violent felony" from § 924(e)(2)(B), and § 4B1.4(b) of the guidelines provides for a higher offense level for armed career offenders.

Wade contends that the district court erred in sentencing him as an armed career criminal because attempted burglary under Georgia law is not a violent felony within the meaning of § 924(e)(2)(B) and therefore cannot serve as one of the three predicate offenses. Wade also contends that his implicit admission throughout the sentence proceeding, even when coupled with the explicit one to us at oral argument, that he was convicted because he attempted to kick in the door of a residence, is immaterial under the categorical approach of Taylor v. United States, 495 U.S. 575, 600, 110 S. Ct. 2143, 2159 (1990).

We disagree. It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005); see also United States v. Walters, 269 F.3d 1207, 1213 (10th Cir. 2001); United States v. Joshua, 40 F.3d 948, 952 (8th Cir. 1994). It is also established law that the failure to object to a district

court's factual findings precludes the argument that there was error in them. See United States v. Weir, 51 F.3d 1031, 1033 (11th Cir. 1995); United States v. Norris, 50 F.3d 959, 962 (11th Cir. 1995) ("[D]efense counsel was given at least two additional opportunities to object to the findings of the presentence investigation report. There were no objections, so under our holdings any such objections now come too late.") (footnote and emphasis omitted). Finally, Wade also conceded at oral argument that his attempted burglary conviction resulted from an attempt to kick in the door of a residence to commit a theft, and we accept that concession. See Rozar v. Mullis, 85 F.3d 556, 563 (11th Cir. 1996); United States v. Gerber, 994 F.2d 1556, 1558 (11th Cir. 1993). For all of these reasons, we will treat the prior conviction we are considering as one for attempted burglary of a dwelling, which is how it was treated in the district court.

This Court has not specifically considered whether attempted burglary of a dwelling in violation of Georgia law is a violent felony within the meaning of § 924(e)(2)(B). We have, however, held that attempted burglary of a dwelling under Florida law is a violent felony. United States v. James, 430 F.3d 1150, 1157 (11th Cir. 2005), cert. granted, 126 S. Ct. 2860 (U.S. Jun. 12, 2006) (No. 05-9264); see also United States v. Rainey, 362 F.3d 733, 736 (11th Cir. 2004) (attempted arson under Florida law is a violent felony). In James we rejected the

defendant's argument that attempted burglary of a dwelling was not a violent felony because it did not present a serious potential risk of physical injury to another but merely posed a "risk of a risk." See James, 430 F.3d at 1156. We held that "because burglary is an enumerated felony under § 924(e)(2)(B)(ii), and because under Rainey an attempt to commit an enumerated felony under § 924(e)(2)(B)(ii) constitutes a 'violent felony,' attempted burglary is also a 'violent felony.'" Id. at 1157. We reasoned that "an attempt to commit burglary, like an attempt to commit arson, presents the potential risk of physical injury to another sufficient to satisfy the ACCA's definition of a 'violent felony.'" Id.[1]

The James decision is controlling here. Florida's attempt statute provides that a person commits criminal attempt when he "attempts to commit an offense prohibited by law and in such attempt does <u>any act toward the commission</u> of such offense." Fla. Stat. § 777.04(1) (emphasis added). Georgia's statute provides that "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs <u>any act which constitutes a substantial step toward the</u>

---

[1] Some of the language in the James opinion refers broadly to "attempted burglary" and "an attempt to commit burglary," but the facts of the case specifically involved attempted burglary of a dwelling, not of some other structure. Indeed, the heading of our discussion of the issue in James is: "Whether Attempted Burglary of a Dwelling is a 'Violent Felony.'" Id. at 1156. The holding in the James case covers convictions for attempted burglary of a dwelling, not any other crime because the issues decided in a case can extend no further than the facts presented by that case. See Watts v. BellSouth Telecomms., Inc., 316 F.3d 1203, 1207 (11th Cir. 2003); United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000).

10

commission of that crime." Ga. Code Ann. § 16-4-1 (emphasis added). Because "any act which constitutes a substantial step" is narrower than "any act toward the commission," Georgia's attempt statute is narrower than Florida's and thus describes conduct that is farther advanced toward completion of the offense of burglary, which is listed as a violent felony in § 924(e)(2)(B)(ii).

Our James and Rainey decisions establish that if an offense is an enumerated violent felony under § 924(e)(2)(B)(ii), then the crime of attempting to commit that offense is also a violent felony. See James, 430 F.3d at 1156–57; Rainey, 362 F.3d at 735–36. Although the government concedes that Georgia's burglary statute, Ga. Code Ann. § 16-7-1, is non-generic, Wade's failure to object to the factfindings at sentencing and his admission at oral argument conclusively establish that he was in fact convicted of attempting to commit a generic burglary within the meaning of § 924(e)(2)(B)(ii). See Taylor, 495 U.S. at 599, 110 S. Ct. at 2158. Also, the difference in wording of the Georgia and Florida attempt statutes reinforces application of that rule of decision here instead of undermining it. We are, of course, bound by the prior panel precedent rule to follow those two decisions. See United States v. Steele, 147 F.3d 1316, 1317–18 (11th Cir. 1998). As a result, the district court did not err in considering Wade's conviction for

attempted burglary of a dwelling as one of his three predicate offenses for purposes of the ACCA.

## III.

Wade also contends that the district court erred in sentencing him as an armed career criminal because the prior convictions used to support the enhanced sentence were not listed in the indictment. This contention is barred by Almendarez-Torres v. United States, 523 U.S. 224, 226–27, 118 S. Ct. 1219, 1122 (1998), which we have repeatedly held remains the law until the Supreme Court overrules it. E.g., United States v. Gibson, 434 F.3d 1234, 1246–47 (11th Cir. 2006); United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315–16 (11th Cir. 2005), cert. denied, __ U.S. __, 126 S. Ct. 457 (2005); United States v. Orduno-Mireles, 405 F.3d 960, 963 (11th Cir. 2005), cert. denied, __ U.S. __, 126 S. Ct. 223 (2005).

## IV.

Section 3E1.1(a) of the guidelines provides for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The defendant has the burden of "clearly demonstrating

acceptance of responsibility and must present more than just a guilty plea." United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999).

The commentary to § 3E1.1 states that in determining whether a defendant should receive a reduction under subsection (a) of that guideline, district courts may consider, among other things: (1) whether the defendant truthfully admitted the conduct comprising the offense of conviction, and either truthfully admitted or did not falsely deny "any additional relevant conduct for which the defendant is accountable under § 1B1.3"; (2) the defendant's "voluntary termination or withdrawal from criminal conduct or associations"; and (3) "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.1(a), (b), (h). "We treat the commentary in the Sentencing Guidelines Manual as authoritative." United States v. Searcy, 418 F.3d 1193, 1195 n.3 (11th Cir. 2005).

A defendant who pleads guilty is not entitled to a reduction for acceptance of responsibility as a matter of right. U.S.S.G. § 3E1.1, cmt. n.3. However, pleading guilty before trial, combined with truthful admission of the conduct comprising the offense and relevant conduct, all of which Wade did, constitutes significant evidence of acceptance of responsibility. Id. Those acts may still be outweighed by conduct of the defendant that is inconsistent with acceptance of

responsibility.  Id.  The § 3E1.1 commentary does not expressly indicate if a district court, in evaluating whether a defendant has clearly demonstrated acceptance of responsibility, may consider the defendant's conduct following the offense for which he was ultimately convicted but before federal charges were brought against him.

The district court's reason for concluding that Wade had not accepted responsibility was that he had kept on with his criminal conduct after his December 19, 2003 arrest as evidenced by his commission of the very same crime again on May 12, 2004.  The theory is that with two strikes a defendant is out of consideration for acceptance of responsibility.  Wade disagrees, arguing that the focus should be on his conduct after federal charges were brought which did not happen until July 27, 2004.  There is no dispute that after the federal charges were brought Wade did everything right.  The issue, then, is whether conduct occurring before any federal charges are in sight can wipe out the effect of a defendant's acts accepting responsibility after those charges are brought.

In arguing for an affirmative answer to that question, the government relies principally on United States v. Spraggins, 868 F.2d 1541 (11th Cir. 1989).  In that case the district court had denied Spraggins an acceptance of responsibility reduction even though he had consented to warrantless searches and confessed and

14

pleaded guilty to the charged offense, which was receiving through the mail sexually explicit materials depicting minors. Id. at 1542. The district court found that Spraggins had "confessed [to] this crime and consented to warrantless searches simply to avoid a lengthy term of incarceration," a finding based on the fact that he had continued to molest children after an earlier conviction and had lied about that at his sentence hearing. Id. at 1543. As we summarized it, the district court, after considering the factors listed in the § 3E1.1 commentary, "determined that Spraggins' admission was untimely and did not encompass all the conduct related to the particular offense alleged in the indictment." Id. We affirmed. Id. at 1543–44.

This case is different from the Spraggins case. In this case, unlike that one, there is no finding of an untimely and incomplete admission. See Spraggins, 868 F.2d at 1543. Wade did not lie about his criminal activity at the sentence hearing. The district court based its denial of the reduction for acceptance of responsibility solely on Wade's pre-indictment criminal activity.

We have not addressed this issue before, but other circuits have. The Sixth Circuit considered the question in United States v. Jeter, 191 F.3d 637 (6th Cir. 1999), abrogated on other grounds, Buford v. United States, 532 U.S. 59, 121 S. Ct. 1276 (2001). Jeter was arrested in June 1996 on state charges of engaging in

15

fraudulent loan transactions and was indicted on federal charges in November 1997. Id. at 638. The district court denied him a § 3E1.1 reduction because after his 1996 arrest on state charges, but before the federal indictment was filed, Jeter continued to engage in the same illegal conduct. Id. The Sixth Circuit reversed, holding that a district court may not use a defendant's "preindictment state crimes as a basis for denying him a reduction for acceptance of responsibility on the federal charges." Id. at 639. It reasoned:

> Although we believe that district courts have discretion in determining the time period for acceptance of responsibility, we do not believe they have unbridled discretion. Allowing a district court to deny a sentencing reduction for acceptance of responsibility solely because he committed the federal crimes after his arrest and indictment on state crimes would place any defendant who has a prior record of similar crimes at risk of having the district court deny a reduction for acceptance of responsibility, even though the defendant has pled guilty early in the proceedings and cooperated with the government throughout the federal investigation.

Id. at 640. The court determined that because Jeter had no notice that he would be federally prosecuted until the indictment was filed, the relevant time period for evaluating acceptance of responsibility began at that time. Id. at 641.

The First Circuit considered the issue under a different set of facts in United States v. McLaughlin, 378 F.3d 35 (1st Cir. 2004). McLaughlin was charged by federal indictment with one count of drug trafficking. Id. at 37. Four months

16

later, a grand jury superseded the indictment, charging him with three counts of drug trafficking. Id. While McLaughlin was free on pretrial release, state authorities arrested him for drunk driving and drug possession. Id. Although McLaughlin pleaded guilty to a single-count information, the district court denied him a § 3E1.1 reduction because of his conduct while on pretrial release. Id. On appeal, McLaughlin argued that the court should not have considered that conduct because it took place before the filing of the information. Id. at 38.

Although it affirmed the district court, the First Circuit noted that "courts cannot go back limitlessly in time in assessing acceptance of responsibility" and that "[n]ormally, the lodging of a federal charge marks the commencement of the relevant time frame." McLaughlin, 378 F.3d at 41. The court explained that "the clock should start to run no later than the time that the defendant has been put on notice, by the filing of a formal charge, that federal prosecutors have taken an interest in his conduct." Id. Applying that rule to the facts of the case before it, the court stated that from the date of the federal indictment, McLaughlin knew that the Justice Department had an interest in the conduct underlying the count of conviction. Id. Even so, he committed other crimes while on pre-trial release for the federal charge. Id. There was no reason to distinguish between the federal

indictment and the federal information when the same conduct supplied the basis for the charges contained in both of them.  Id.

The decisions of the First and Sixth Circuit are consistent.  Both look to the commencement of federal charges against the defendant as the starting point for measuring acceptance of responsibility.  That provides a bright line rule, and those are helpful when it comes to applying particular sentencing guidelines because clear rules avoid uncertainty, disagreement, and appeals.  Another good reason for the federal charges starting point is that the defendant is being sentenced on federal charges, and his acceptance of responsibility in reaction to those charges is what we ought to be seeking to foster.  The rule the government argues for would work against that incentive.  Considering a defendant's reaction to prior state charges would decrease the likelihood of a reduction being granted no matter how quickly and fully he accepted the later federal charges, thereby decreasing the incentive for him to do so.  See Jeter, 191 F.3d at 640.  That would not be a good thing insofar as the federal charges are concerned, which is what we are primarily concerned about.  These reasons lead us to conclude that a defendant's conduct following earlier state charges, at least where that conduct occurred before he knew that federal charges were forthcoming, ought not vitiate the effect of his otherwise exemplary acceptance of responsibility once the federal charges were

18

filed. The district court should not have denied the two-level § 3E1.1(a) reduction on the basis of Wade's pre-federal charge conduct.

Notwithstanding the district court's § 3E1.1(a) error, we are not required to reverse and remand the case if the court would have likely sentenced Wade in the same way absent the error. See United States v. Scott, 441 F.3d 1322, 1329 (11th Cir. 2006); United States v. Williams, 431 F.3d 767, 773–76 (11th Cir. 2005) (Carnes, J., concurring). The district court did not indicate that its decision to deny a reduction for acceptance of responsibility was based on any factors other than Wade's conduct leading to his second arrest on state charges for possession of a firearm. Nor is there any indication that the court might have reached the same result using its Booker authority to sentence outside the guidelines based on the 28 U.S.C. § 3553(a) factors. See Williams, 431 F.3d at 773–76 (Carnes, J., concurring). Instead, the district court indicated that it felt the guidelines range, as calculated, was excessive. Had the court known that it was not entitled to deny a reduction for acceptance of responsibility on the basis it did, the court probably would have imposed a lesser sentence. Accordingly, we will have to vacate the sentence and remand the case to the district court for re-sentencing to correct this error.

Wade also contends that he is entitled not only to the two-step reduction provided in subsection (a) of § 3E1.1 but also to the extra one-level reduction offered in subsection (b). He is wrong about that. A reduction under subsection (b) may be granted only on formal motion by the government at the time of sentencing "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial." U.S.S.G. § 3E1.1, cmt. n.6. Here there was no government motion to support an additional one-step reduction.

## V.

Finally, Wade contends that the district court erred in imposing his sentence because the court incorrectly believed that it was allowed to sentence him below the guidelines range only through the device of a downward departure, and did not realize that it was authorized to consider a below the range sentence based on the factors listed in 18 U.S.C. § 3553(a). That error, if any, is academic because we are remanding for re-sentencing on other grounds. We are confident that district courts throughout this circuit are by now familiar with the remedial part of the Booker decision and that at re-sentencing in this case the court will fully consider exercising the authority it has under Booker and will make clear that it has done so. We express no view on what the result of that consideration ought to be.

## VI.

The sentence is VACATED and the case is REMANDED for further proceedings consistent with this opinion.