IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14044
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cr-00055-AKK-TMP-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NAKEY DEMETRUIS WHITE,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

Before ED CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.[*]

_____

[*] Judge Kevin C. Newsom, who joined the Court on August 4, 2017, did not participate in the en banc poll that was conducted in this case.

BY THE COURT:

A petition for rehearing having been filed and a member of this Court in active service having requested a poll on whether this case should be reheard by the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting a rehearing en banc, it is ORDERED that this case will not be reheard en banc.

MARTIN, Circuit Judge, with whom JILL PRYOR, Circuit Judge, joins, dissenting from the denial of rehearing en banc:

Nakey Demetruis White received a longer sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), in part because earlier in his life he had been convicted of trafficking cocaine in Alabama. A panel of this Court affirmed Mr. White's longer sentence. United States v. White, 837 F.3d 1225, 1227 (11th Cir. 2016) (per curiam). His earlier trafficking conviction was under an Alabama statute that criminalized the mere possession of 28 grams of cocaine. Nevertheless, the panel that affirmed his federal sentence held that his earlier conviction under this statute categorically "involv[ed] . . . possessing [a controlled substance] with intent to manufacture or distribute" within the meaning of the ACCA, 18 U.S.C. § 924(e)(2)(A)(ii), and therefore qualified as a "serious drug offense" predicate that justified a longer sentence under the ACCA. See id. at 1235. The panel said its holding was required by this Court's earlier decision in United States v. James, 430 F.3d 1150 (11th Cir. 2005), overruled on other grounds by Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015). See White, 837 F.3d at 1232–33.

I view James and its application to Mr. White's case to demonstrate how this circuit has expanded the ACCA's definition of a "serious drug offense" beyond what those words call for. I do not read the term "serious drug offense" to include mere possession offenses like Mr. White's. James pioneered this expansion of the

3

definition of "serious drug offense" in the Eleventh Circuit, but I believe its interpretation of the ACCA's serious drug offense definition is wrong for two reasons.  First, it forces federal judges to make empirical determinations that are beyond our institutional competence.  And second, it directly contradicts the Supreme Court's interpretation of the ACCA in Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143 (1990), because it causes federal judges in this circuit to rely on widely varying state labels and policy judgments when they impose ACCA sentences.  The result is that the exact same conduct can support ACCA sentences that are more (or possibly less) harsh based solely on the state where the conduct occurred.  I asked the members of this Court to rehear the panel opinion in Mr. White's case in order to address the problems created by James.  I dissent from the Court's decision not to rehear Mr. White's case, as well as the result that James will continue to stand as the law of our circuit.

## I.

The ACCA requires no less than a fifteen-year prison sentence for a defendant convicted of violating 18 U.S.C. § 922(g)[2] if he has three or more convictions from earlier in his life, when those convictions are either "violent felon[ies]" or "serious drug offense[s]."  18 U.S.C. § 924(e).  Federal courts have devoted much effort in recent years to the question of how to define "violent

_____

[2] 18 U.S.C. § 922(g) makes it a crime for certain people, including felons, to transport, possess, or receive firearms or ammunition.

4

felon[ies]" when sentencing under the ACCA, but here I will discuss the other term—"serious drug offense." The ACCA defines a "serious drug offense" to include any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . ., for which a maximum term of imprisonment of ten years or more is prescribed by law." Id. § 924(e)(2)(A)(ii).

In deciding whether a defendant's earlier conviction fits the ACCA's definition of a "serious drug offense," courts have to apply what is known as the "categorical approach." This approach prohibits courts from looking back to the facts of the case that resulted in the earlier conviction. Descamps v. United States, 570 U.S. ___, 133 S. Ct. 2276, 2283 (2013). Instead, Supreme Court precedent requires courts to look only to the elements of the statute under which the defendant was convicted. See Mathis v. United States, 579 U.S. ___, 136 S. Ct. 2243, 2251 (2016). If the "least of the acts criminalized" by the statute does not fall within the ACCA's definition of a serious drug offense, then a conviction under that statute does not categorically qualify as a serious drug offense. Moncrieffe v. Holder, 569 U.S. ___, 133 S. Ct. 1678, 1684 (2013) (quotation omitted and alteration adopted).

In 2014, Mr. White pled guilty in federal court to one count of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He got a longer sentence

5

under the ACCA based on three earlier convictions.  One of the three was an Alabama conviction for trafficking in cocaine in violation of Ala. Code § 13A-12-231(2).  White, 837 F.3d at 1227–28 & n.1.  As mentioned, this Alabama statute defines a cocaine trafficking offense as occurring when a person "knowingly sells, manufactures, delivers, or brings into [Alabama], or . . . is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine."  Ala. Code § 13A-12-231(2).  These words mean that a person can be convicted under § 13A-12-231(2) for the mere possession of an ounce of cocaine.  From the government's perspective, it can convict a defendant under this statute without offering any proof that he had an intent to sell, manufacture, deliver, or distribute cocaine.

Mr. White appealed his federal sentence to this Court, arguing (as he did in the District Court) that he is not eligible for the longer sentence he got under the ACCA.  He argues that his conviction for trafficking in cocaine, as defined by Ala. Code § 13A-12-231(2), does not categorically qualify as a "serious drug offense."  White, 837 F.3d at 1228, 1232.  He says that because § 13A-12-231(2) prohibits the mere possession of 28 grams of cocaine and doesn't require the government to prove any intent to distribute, his conviction under that statute doesn't necessarily "involv[e] manufacturing, distributing, or possessing [a controlled substance] with intent to manufacture or distribute" within the meaning of 18 U.S.C.

6

§ 924(e)(2)(A)(ii). White, 837 F.3d at 1228, 1232. Thus, he says his Alabama trafficking conviction cannot be a "serious drug offense." Id.

Relying on James, the panel rejected Mr. White's argument. Id. at 1232–35. James said that because the ACCA includes the expansive term "involving" in its definition of "serious drug offense," 18 U.S.C. § 924(e)(2)(A)(ii), the definition is broad enough to include "state offenses that do not have as an element the manufacture, distribution, or possession of drugs with intent to manufacture or distribute." 430 F.3d at 1155. James addressed a Florida trafficking-cocaine-by-possession conviction under Fla. Stat. § 893.135(1)(b), which, like the Alabama statute in Mr. White's case, also criminalized the mere possession of 28 grams of cocaine. The James panel said that a conviction under this Florida statute qualifies as a "serious drug offense" under the ACCA because it "involv[es]" possessing cocaine with intent to distribute. Id. at 1155. More to the point, James said that courts could infer an intent to distribute from (1) the quantity of cocaine a defendant must possess in order to violate the Florida trafficking statute; and (2) the placement of that trafficking statute in Florida's criminal code. Id. at 1154–55. Mr. James's earlier Florida conviction was under a statute which found its home in the highest tier of a three-tiered statutory drug scheme. As a result, it had harsher penalties than both simple possession and possession with intent to distribute. Id.

7

Like the Florida statute in <u>James</u>, the statute we examine for Mr. White's case (Ala. Code § 13A-12-231(2)) criminalizes the mere possession of 28 grams of cocaine, and is also the most serious crime in a three-tiered scheme for punishing drug offenses in Alabama.[3]  For these reasons, Mr. White's panel said it was bound by <u>James</u> to hold that his cocaine trafficking conviction under § 13A-12-231(2) categorically qualifies as a "serious drug offense."  The panel so held, even though the Alabama statute does not require as an element any intent to distribute or manufacture cocaine.  <u>White</u>, 837 F.3d at 1235.

## II.

This Court should discard the approach it adopted in <u>James</u>.  Along with it, we should be rid of the notion that convictions under state statutes criminalizing the mere possession of drugs can categorically "involv[e] . . . possessing [a controlled substance] with intent to manufacture or distribute" within the meaning of the ACCA.  18 U.S.C. § 924(e)(2)(A)(ii).  <u>James</u> took the word "involving" to mean that a conviction under a state statute prohibiting the mere possession of cocaine can still "involv[e]" an intent to distribute cocaine—even though the statute does not require the state to prove such an intent—so long as the amount of cocaine specified in the statute is large enough.  <u>See</u> 430 F.3d at 1154–55.  But

---

[3] The two lower tiers include: (1) a statute that prohibits possession of any amount of controlled substance other than marijuana, <u>see</u> Ala. Code § 13A-12-212; and (2) a statute that prohibits distribution of or possession with intent to distribute a controlled substance other than marijuana.  <u>See</u> <u>id.</u> § 13A-12-211.

8

giving the word "involving" such a broad application forces federal judges to engage in empirical factfinding in order to arrive at a person's sentence. That is, whenever a defendant has an earlier conviction under a state statute covering the mere possession of a certain amount of a drug, James requires the federal sentencing judge to decide whether that amount is sufficiently correlated with an intent to distribute so as to "involv[e]" that intent.

The Supreme Court has cautioned us that taking this type of leap from known facts to the unknown is an empirical determination not within the institutional competence of judges. For example, in United States v. Gainey, 380 U.S. 63, 85 S. Ct. 754 (1965), the Supreme Court considered the constitutionality of a criminal statute that allowed juries to infer that someone was guilty of operating a distillery business based on that person's unexplained presence at the site of an unregistered still. Id. at 64–65, 85 S. Ct. at 756. The Supreme Court observed that the constitutionality of the statute hinged upon "the rationality of the connection between the facts proved and the ultimate fact presumed." Id. at 66, 85 S. Ct. at 757 (quotation omitted). The Court recognized that assessing the correlation between proven facts and a presumed fact is a "highly empirical" determination. Id. at 67, 85 S. Ct. at 757. It warned that "in matters not within specialized judicial competence . . . significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions

9

from it." Id. James requires sentencing judges to make a similar "highly empirical" determination. The judge must assess the correlation between the possession of a certain amount of a drug (a proven fact) and the intent to distribute it (a presumed fact). These correlations are questions for Congress to answer. As Gainey told us, they are neither "within specialized judicial competence [n]or completely commonplace." Id.

Since deciding Gainey, the Supreme Court has repeatedly reminded courts that presumptions legislated into statutory provisions are entitled to deference because legislators are better equipped to make empirical judgments than judges. See, e.g., Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 195, 117 S. Ct. 1174, 1189 (1997); Mathews v. Lucas, 427 U.S. 495, 515–16, 96 S. Ct. 2755, 2767 (1976). This is important here because Congress has never equated the possession of a single ounce of cocaine with an intent to distribute it.

Although I am certainly aware that federal courts handle a lot of drug cases, federal judges are not naturally possessed of empirical data about what drug amounts indicate an intent to consume the drug, or on the other hand, distribute it. Indeed, even if we had the data, we have no training in how to interpret it. A comparison of this Court's James decision (and our decision in Mr. White's case) with the Fourth Circuit's decision in United States v. Brandon, 247 F.3d 186 (4th Cir. 2001), illustrates the unpredictable and inconsistent results that can follow

10

when judges engage in this type of empirical factfinding.  In Brandon, like in both James and White, the Fourth Circuit considered a statute that prohibited the mere possession of 28 grams of cocaine.  Id. at 188.  But the Fourth Circuit held that 28 grams was not enough to infer intent to distribute.  Id. at 192–93.  The fact that our sister circuit came to the opposite empirical judgment about the identical amount of cocaine demonstrates the peril of relying on courts to make these types of empirical judgments.  See Gainey, 380 U.S. at 67, 85 S. Ct. at 757 ("Yet it is precisely when courts have been unable to agree as to the exact relevance of a frequently occurring fact in an atmosphere pregnant with illegality that Congress' resolution is appropriate.").

We should avoid embroiling courts in tasks they cannot execute consistently, or even competently.  It is a mistake to interpret "involving" in the ACCA's "serious drug offense" definition to include convictions under statutes that criminalize mere possession.[4]  I reject the guidance from James that requires us to do so.

---

[4] Mr. White's panel correctly pointed out that this Court and other circuits have adopted an "expansive interpretation of the word 'involving' as used in the ACCA's definition of a serious drug offense."  White, 837 F.3d at 1233.  I do not quarrel with James's conclusion that "involving" (as used in the ACCA) means something broader than requiring as an element.  430 F.3d at 1155.  But I object to reading "involving" so expansively as to stretch the ACCA's "serious drug offense" definition to cover mere possession crimes like Mr. White's.  As the panel candidly noted, none of our sister circuits has done so.  See White, 837 F.3d at 1234.

Other circuits have ruled that the ACCA encapsulates crimes like attempted possession with the intent to sell, see United States v. King, 325 F.3d 110, 113 (2d Cir. 2003), and offers to sell drugs where the defendant never possesses drugs and the offer is not accepted.  See United

11

III.

It is no answer to say that under James, state legislatures (and not courts) make the necessary empirical judgments about what amount of a drug shows an intent to distribute.  I recognize that in Mr. White's case, the title of Ala. Code § 13A-12-231 is "Trafficking in cannabis, cocaine, etc," and that it is the most serious crime in a three-tiered statutory drug scheme in the Alabama Code. However, Alabama's naming and placement of its statute is simply not relevant to a decision by a federal sentencing court about whether a conviction under that statute, Ala. Code § 13A-12-231(2), necessarily "involv[es] . . . intent to manufacture or distribute" cocaine under the ACCA.  Congress has never clearly indicated it intended for the application of the ACCA to depend on state law, state labels, or state empirical judgments.  To the contrary, Congress's "general approach" in defining predicate offenses in the ACCA was to use "uniform, categorical definitions to capture all offenses of a certain level of seriousness . . . regardless of technical definitions and labels under state law."  Taylor, 495 U.S. at 590, 110 S. Ct. at 2154.

In Taylor, the Supreme Court considered whether the meaning of "burglary" as used in the ACCA, see 18 U.S.C. § 924(e)(2)(B)(ii), depends on the definition

States v. Whindleton, 797 F.3d 105, 110–11 (1st Cir. 2015).  All those offenses require the government to prove that the defendant intended to sell or distribute drugs.  Neither of the state statutes which resulted in longer sentences in James or Mr. White's case required such proof.

12

of "burglary" adopted in the state of conviction.  The Taylor Court found it "implausible" that Congress intended for identical conduct to count as a "violent felony" under the ACCA if committed in California (in light of California's broader definition of "burglary") but not if committed in Michigan.  Id. at 590–91, 110 S. Ct. at 2154.  The Supreme Court concluded that "[w]ithout a clear indication that . . . Congress intended to abandon its general approach of using uniform categorical definitions to identify predicate offenses, we do not interpret Congress' omission of a definition of 'burglary' in a way that leads to odd results of this kind."  Id. at 591, 110 S. Ct. at 2154.  In reaching this conclusion, the Taylor Court quoted an earlier Supreme Court decision: "[I]n the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law."  Id. at 591–92, 110 S. Ct. at 2154 (quoting United States v. Turley, 352 U.S. 407, 411, 77 S. Ct. 397, 399 (1957)).  The reason for this presumption is "because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control."  Id. at 591, 110 S. Ct. at 2154 (quoting Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 119–20, 103 S. Ct. 986, 995–96 (1983)).

As with the term "burglary" in the ACCA, there is no plain indication that Congress wanted to jettison the goal of uniform national sentencing by

13

incorporating diverse state laws and policy judgments into the ACCA's definition of "serious drug offense."  The Fourth Circuit pointed out in <u>Brandon</u> that states vary widely in their judgments about the amount of cocaine needed to presume an intent to distribute.  247 F.3d at 192 (noting that possessing 5 grams of cocaine constitutes trafficking in Delaware, but more than 150 grams is required to be found guilty of trafficking in Missouri).[5]  This disparity demonstrates that defining "serious drug offense" in the ACCA by relying on the empirical judgments of the state of conviction would yield "odd results" like the ones discussed and ultimately rejected in <u>Taylor</u>.  <u>See</u> 495 U.S. at 591, 110 S. Ct. at 2154.  For example, possessing 28 grams of cocaine would count as a "serious drug offense" if committed in Delaware or Alabama, but not in Missouri.  In this way, this Court's decision in <u>James</u> flies in the face of <u>Taylor</u>.  It "incorporate[s] diverse state laws" into the ACCA—a federal sentencing statute—even though there is no "plain indication" that Congress intended for the ACCA to be interpreted this way.  <u>See</u> <u>Taylor</u>, 495 U.S. at 591–92, 110 S. Ct. at 2154 (quotation omitted).

I do not read the ACCA's reference to "an offense under State law" in its definition of a "serious drug offense," 18 U.S.C. § 924(e)(2)(A)(ii), to be a "clear indication" that Congress intended for the ACCA's serious drug offense definition to incorporate the wide spectrum of labels and policy judgments from 50 states.

---

[5] This wide range in empirical judgments by state lawmakers is further evidence that courts are not equipped to make these judgments.

14

Taylor, 495 U.S. at 591, 110 S. Ct. at 2154.  To begin, construing it this way means that the ACCA's "violent felony" and "serious drug offense" definitions require opposite interpretive approaches.  The ACCA's definition of "violent felony" does not reference state law, thus establishing predicate offenses uniformly, categorically, and without regard to state labels and judgments.  In contrast, our Court's application of the "serious drug offense" portion of the statute cannot be uniformly applied.  This divergence is untenable because both violent felonies and serious drug offenses support the same penalties under the ACCA, and the Supreme Court has "repeatedly recognized" that those penalties must be "applied uniformly, regardless of state-law variations." Descamps, 133 S. Ct. at 2302 (Alito, J., dissenting).

Having addressed the impact of this circuit's inexplicably divergent reliance on state judgments to determine what is a "serious drug offense," but not what is a "violent felony," we will also be well-served to review the structure of the statute. ACCA's reference to "an offense under State law" in 18 U.S.C. § 924(e)(2)(A)(ii) does not, in my view, indicate Congressional intent to "abandon its general approach of using uniform categorical definitions to identify predicate offenses" in favor of a state-specific approach. Taylor, 495 U.S. at 591, 110 S. Ct. at 2154. The ACCA's full definition of "serious drug offense" is:

(A) the term "serious drug offense" means—

15

(i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

(ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

18 U.S.C. § 924(e)(2)(A).  The ACCA's full definition of "violent felony" is as

follows:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another

Id. § 924(e)(2)(A)–(B).

The "serious drug offense" definition makes clear that two categories of

crimes qualify as valid predicates: (1) certain federal offenses under particular

provisions of the United States Code (described in § 924(e)(2)(A)(i)); and (2)

certain state offenses (described in § 924(e)(2)(A)(ii)).  So when the ACCA refers

16

to "offense[s] under State law" in § 924(e)(2)(A)(ii), it does so to distinguish them from the already specifically-identified federal offenses covered in the previous subsection, § 924(e)(2)(A)(i).  In other words, § 924(e)(2)(A)(ii) refers to state law offenses merely because referring to "any offense" would be duplicative of § 924(e)(2)(A)(i) insofar as the enumerated federal offenses are concerned, and could also include federal offenses beyond those set out in § 924(e)(2)(A)(i). There is no similar redundancy problem in the ACCA's "violent felony" definition, so there is no need to reference state law.  Instead of identifying federal predicates in one subsection and state predicates in another, § 924(e)(2)(B) says "any crime"—federal or state—that meets at least one of the two criteria listed in §§ 924(e)(2)(B)(i)–(ii) is a "violent felony."

And the remaining text of § 924(e)(2)(A)(ii) casts further doubt on the notion that the subsection's reference to state law was meant to incorporate the entire range of diverse state policy judgments into a federal criminal statute. Again, that subsection covers "offense[s] under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))."  Id. § 924(e)(2)(A)(ii) (emphasis added).  By limiting the reach of the ACCA to crimes involving only the substances covered by the federal Controlled Substances Act, the statute explicitly disregards state judgments about

17

which substances ought to be "controlled" or regulated by law. For this reason as well, I find it hard to believe the ACCA means for federal courts to defer to state judgments on matters of criminal culpability such as the amount of cocaine that justifies an inference of intent to distribute it.

I do not view § 924(e)(2)(A)(ii)'s reference to state law to be a "plain indication" that Congress intended the meaning of "serious drug offense" to depend on the policy judgments of the state of conviction. Taylor, 495 U.S. at 591, 110 S. Ct. at 2154 (quotation omitted). James was therefore wrong to require federal courts to look to and rely on state law and state labels when those courts are deciding whether a defendant's earlier state conviction qualifies as a "serious drug offense" under the ACCA.

## IV.

James interpreted the ACCA in a way that compels courts within the Eleventh Circuit to make empirical judgments about what amounts of drugs can be presumed to show an intent to distribute those drugs. A second problem is that James's interpretation of the ACCA requires our courts to rely on state labels and empirical judgments in such a way that the possession of the exact same amount of cocaine might count as a "serious drug offense" if committed in Delaware or Alabama, but not if committed in Missouri. In both of these ways, James is an

affront to Congress's intent to have a uniform national system for setting federal sentences.

I cannot defend the conclusion that Mr. White's Alabama cocaine trafficking conviction necessarily "involv[ed]" an intent to distribute cocaine within the meaning of the ACCA's definition for a "serious drug offense." 18 U.S.C. § 924(e)(2)(A)(ii). Nor can I understand this Court's defense of it. In light of this flaw in the method by which Mr. White was sentenced, he has only two qualifying predicate offenses, so the statute does not authorize his sentence to be longer than ten years. See id. § 924(a)(2). He is therefore, in my view, serving an illegal sentence. And of course, Mr. White is not alone in this way. This Court's equating mere possession of drugs with a "serious drug offense" has no doubt caused scores of people in the Eleventh Circuit to serve longer sentences than would be imposed in other parts of our country.

I respectfully dissent from this Court's decision to let James stand as our precedent by denying Mr. White's petition for rehearing en banc.

19