[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11495
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cr-00042-EAK-CPT-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YUESON ESCOBAR VALENCIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 15, 2019)

Before WILSON, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

Yueson Escobar Valencia appeals his convictions after a jury found him guilty of conspiracy to possess and possession with the intent to distribute five or more kilograms of cocaine while on board a vessel that was subject to the jurisdiction of the United States.  Valencia argues that the district court erred in denying his motion for judgment of acquittal because the government did not present sufficient evidence to support the jury's verdict.  Valencia also appeals his sentence, which he argues was procedurally and substantively unreasonable.  After review, we affirm.

## I.

First, Valencia argues the district court erred in denying his motion for a judgment of acquittal because the government did not present sufficient evidence that he conspired with intent to distribute cocaine, or that he possessed with intent to distribute cocaine.  Valencia notes that the United States Coast Guard (USCG) did not actually recover cocaine from his boat, and that the only direct evidence linking him to the conspiracy was the testimony of the government's cooperating witnesses.  Valencia also contends that the trace particles of cocaine that were found on the boat could have been on the boat for months, and that the cooperating witnesses' testimony was inconsistent with the video presented at trial.

At trial, the government presented testimony from several members of the USCG who were working on a counter-drug mission off the coast of Central

2

America.  The USCG spotted and intercepted a panga, a boat that is typically used to move drugs in the region, that was travelling at a high rate of speed without navigation lights in the dark.  The USCG recorded a video of the panga, and the video captured men throwing three large objects overboard.

Officers from the USCG boarded the panga and encountered four men: Yueson Escobar Valencia, Oscar Humberto Cristales Solares, Alejandro Estupinan Arroyo, and Walter Hugo Rodriguez.  The USCG took ion swipes of the panga which tested positive for cocaine.  At Valencia's trial, both Arroyo and Solares testified.  Arroyo testified that he was hired to move 350 kilograms of cocaine from Colombia to Guatemala.  Arroyo testified that the panga originally carried seven bales of cocaine, but that the men decided to dump the drugs when they saw the USCG plane.  Arroyo testified that Solares and Valencia threw out four of the bales, and that Arroyo helped them throw out the last three.  Solares testified and corroborated Arroyo's testimony.  Finally, the government introduced a recorded interview with Valencia, in which Valencia was advised of his *Miranda* rights and waived them; Valencia admitted in the video that there had been eight bales on the panga.

We review the sufficiency of the evidence supporting a criminal conviction de novo.  *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007).  We consider the evidence in the light most favorable to the jury's verdict, drawing all

3

reasonable inferences and making all credibility choices in the government's favor. *Id.* We will reverse a conviction based on insufficient evidence "only if no reasonable trier of fact could have found guilt beyond a reasonable doubt." *Id.* Credibility determinations are the exclusive province of the jury, and we will not disturb the jury's verdict unless the testimony is incredible as a matter of law. *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997). For a witness's testimony to be incredible as a matter of law, it must be "unbelievable on its face." *Id.*

To demonstrate a conspiracy, the government must prove that two or more persons agreed to commit an offense and that the defendant knowingly and voluntarily participated in the agreement. *United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002). The government can meet its burden through circumstantial evidence. *Id.* A defendant's presence on a vessel containing contraband is a material factor supporting his participation in a conspiracy relating to that vessel. *Id.* at 1122−23.

To establish that a defendant possessed a controlled substance with the intent to distribute, the government must demonstrate knowing possession and an intent to distribute. *United States v. Cruickshank*, 837 F.3d 1182, 1189 (11th Cir. 2016). The government can prove actual or constructive possession through circumstantial evidence. *Tinoco*, 304 F.3d at 1123. A defendant constructively possessed

4

contraband if he exercised some measure of dominion or control over it, either exclusively or in association with others. *Id.* A defendant's intent to distribute may be inferred from the seizure of a large quantity of contraband. *Id.*

When reviewing conspiracy and possession cases that involve a vessel carrying narcotics, we consider the following factors: (1) the probable length of the voyage; (2) the size of the contraband shipment; (3) the relationship between captain and crew; (4) the obviousness of the contraband; and (5) other factors, including diversionary maneuvers before apprehension, attempts to flee, and inculpatory statements made after arrest. *Id.* Once the government shows that a large quantity of contraband was on the vessel, "the government's remaining burden of showing that the crew knowingly participated in the drug smuggling operation is relatively light." *Id.* (internal quotation omitted). "Indeed, the government can meet its remaining burden by proving any one of the other previously listed factors." *Id.*

When viewed in the light most favorable to the government, the evidence was sufficient to establish that Valencia had conspired to possess and possessed with the intent to distribute a large quantity of cocaine. *See Walker*, 490 F.3d at 1296. While Valencia disputed the presence of cocaine on the panga, the jurors were free to disbelieve Valencia's explanation and infer from the cooperating witnesses' similar accounts of the voyage, the positive ion scan results, and the

USCG's video that there were at least five kilograms of cocaine, if not more, on the panga. *See Calderon*, 127 F.3d at 1325. Although Valencia argues that Arroyo and Solares had motive to lie, we cannot disturb the jury's verdict on that basis because their testimony was not unbelievable on its face. *Id.*

Additionally, factors such as the small size of a crew, diversionary tactics before apprehension, and the obviousness of the contraband aboard a vessel all point in favor of knowing participation in a drug conspiracy. *See Tinoco*, 304 F.3d at 1123−24. Such factors were present here. Accordingly, the district court did not err in denying Valencia's motion for judgment of acquittal.

## II.

Second, Valencia argues that the district court erred by applying an improper drug quantity to his case and by failing to consider the 18 U.S.C. § 3553(a) factors. Valencia specifically argues that the court should have calculated the drug quantity based on seven bales of cocaine, not eight bales. Valencia also argues his sentence was "arbitrary and unreasonable" because it was only based on drug quantity and was higher than the sentences of his co-conspirators.

Valencia's Presentence Investigation Report (PSI) attributed 160 kilograms to Valencia (eight bales of cocaine, with 20 kilograms of cocaine per bale). In his recorded interview, Valencia had admitted the panga originally had eight bales. The PSI calculated that Valencia had a total offense level of 36 and a criminal

history category of I, yielding an advisory guidelines range of 188 to 235 months. Valencia did not object to the PSI and, at sentencing, Valencia affirmatively reiterated that he had no objections to the facts in the PSI or to the application of the guidelines by the probation office. The district court accepted the statements in the PSI as its own findings of fact and sentenced Valencia to 210 months. The court did so after openly considering Valencia's age, employment, educational history, and his role in the conspiracy.

When a defendant fails to make specific objections at sentencing after being given an opportunity to do so by the district court, we review challenges to the sentence on appeal for plain error. *United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014). To prevail under plain error review, the defendant must demonstrate that (1) the district court erred, (2) the error was plain, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 822.

A sentencing court may base its factual findings on undisputed statements in the PSI. *United States v. Bennet*, 472 F.3d 825, 832 (11th Cir. 2006); *see also United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").

When pronouncing a defendant's sentence, a district court "need only set forth enough to satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decision-making authority." *United States v. Carpenter*, 803 F.3d 1224, 1232 (11th Cir. 2015) (internal quotation omitted). The court "is not required to incant the specific language used in the guidelines or articulate its consideration of each individual § 3553(a) factor, so long as the record reflects the court's consideration of many of those factors." *Id.*

We review the substantive reasonableness of the sentence under an abuse of discretion standard and consider the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). "A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal quotation omitted).

Finally, whether one defendant's sentence creates an unwarranted disparity from other defendants requires us to determine whether the defendants are similarly situated. *See United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009). Defendants who plead guilty and cooperate with the government are not

8

typically similarly situated to defendants who proceed to trial and do not cooperate. *United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir. 2008).

First, because Valencia did not object to any of the factual allegations in the PSI, Valencia admitted those statements for sentencing purposes. *Wade*, 458 F.3d at 1277. Therefore, the district court did not plainly err by relying on the PSI's drug quantity when it calculated the advisory guideline range. Second, even if Valencia had raised his procedural objection regarding the § 3553(a) factors below, the district court did not err, plainly or otherwise, in imposing a 210-month sentence. The court heard the parties' arguments, expressly stated that it had considered the PSI, the advisory guidelines, and the § 3553(a) factors, and found that the sentence imposed was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." The district court was not required to incant the specific language used in the guidelines or articulate its consideration of each individual § 3553(a) factor, and the record reflects the court's consideration of many of those factors.

Finally, to the extent that Valencia's brief raises a challenge to the substantive reasonableness of his sentence, the district court did not abuse its discretion in imposing Valencia's 210-month sentence. While Valencia argues that there was a substantial sentencing disparity between himself and his co-defendants, Valencia and his co-defendants were not similarly situated. Valencia's co-

defendants cooperated with the government, and pleaded guilty, while Valencia proceeded to trial, and thus, their sentence disparity was warranted. *See Williams*, 526 F.3d at 1323. On this record, Valencia's sentence is both procedurally and substantively reasonable. Accordingly, we affirm.

**AFFIRMED.**