[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10677
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20013-JEM-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JHOAN STIVEN CARREAZO ASPRILLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 14, 2020)

Before WILSON, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

In September 2016, Jhoan Stiven Careazzo Asprilla ("Asprilla"), along with Carlos Ibarguen Palacios ("Ibarguen Palacios"), both Colombian citizens, took three Cuban nationals on Ibarguen Palacios's boat through the Colombian waters towards the Panamanian border, where the aliens planned to continue their journey to the United States. During that trip, Asprilla and Ibarguen Palacios raped and murdered one Cuban national and murdered another. The third Cuban national escaped and alerted the Colombian authorities. Colombian law enforcement arrested Asprilla and Ibarguen Palacios. The United States Department of Homeland Security ("DHS") identified the two smugglers as participants in an alien smuggling operation, and Colombia extradited them both to the United States. Asprilla was then charged, and pleaded guilty to, one count of conspiracy to encourage and induce aliens to enter the United States, resulting in death, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and three counts of encouraging and inducing aliens to enter the United States, resulting in death, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv), (B)(iv), and (B)(iii). The United States District Court for the Southern District of Florida sentenced him to 600 months in prison.

On appeal, Asprilla asserts the district court erred in four respects. First, he claims the district court wrongly refused to grant him a downward departure even

2

though his case was not a typical "heartland" case.  Second, he argues the district court erred in applying a first-degree murder cross-reference because he did not commit the crime with malice and the underlying offense (alien smuggling) cannot serve as a predicate for the felony-murder rule.  Third, he contends that the district court failed to adequately explain its reasons for imposing his 600 months sentence.  Fourth, he asserts the district court abused its discretion in imposing a substantively unreasonable sentence of 600 months.  For the reasons that follow, we affirm.

## I.    Background

In July 2016, two Cuban nationals, "E.M.A." and "L.S.C.," began their journey to the United States.  They flew from Cuba to Guyana, then illegally crossed through Brazil and Venezuela, arriving in Colombia in August 2016.  Once there, they sought to arrange transportation to smuggle them to Panama, Mexico, and ultimately, the United States.  While LS.C. and E.M.A. were staying at a hotel in Cucuta, Colombia, Jorge Fernando Rivera Weir ("Rivera Weir") approached them and offered to transport them to the Panamanian border.

E.M.A. and L.S.C. arranged and paid for the journey and the group continued to Turbo, Colombia.[1]  After the payment was received, Rivera Weir

---

[1] E.M.A.'s family in Miami, Florida wired $500 to Rivera Weir as a down payment for the trip.  After the group arrived at a hotel in Turbo, Colombia, E.M.A.'s family wired an additional $1,400 to a person designated by Rivera Weir.

introduced E.M.A. and L.S.C. to his two associates: Ibarguen Palacios and Fredis Valencia Palacios ("Valencia Palacios"). Rivera Weir explained that Ibarguen Palacios and Valencia Palacios operated the boat that Rivera Weir used to transport people through the Colombia rivers to the Panamanian border. Ibarguen Palacios would captain the boat.

Although Rivera Weir only offered transport to the Panamanian border, the Cuban nationals intended to cross the United States border. E.M.A. and L.S.C. told Rivera Weir, Ibarguen Palacios, and Valencia Palacios (together, the "smugglers") that they were travelling to the United States and planned to ultimately settle in Miami. Another Cuban national, D.E.L.S., arrived at the hotel in Turbo and decided to join the group, informing the smugglers that he too was travelling to the United States.

On the morning of September 7, 2016, Ibarguen Palacios and another smuggler, the appellant here, Asprilla, set off on a vessel with the three Cuban nationals, heading towards the Panamanian border.[2] Before the group departed, Asprilla and Ibarguen Palacios agreed that they would rob E.M.A., L.S.C., and D.E.L.S. during the trip, because another smuggler had told them that the Cubans

---

[2] The group, including Valencia Palacios, had attempted to leave on September 6, but shortly after departing, the boat began to take on water, forcing them to return to shore. Ibarguen Palacios took the three Cuban nationals back to his home in Turbo, where they spent the night. They left on a different vessel the next day. No information was provided as to why or how Asprilla came to take the place of Valencia Palacios.

had "a lot" of money.  At some point during the trip, Ibarguen Palacios and Asprilla executed their plan: Ibarguen Palacios brandished a firearm and Asprilla pulled a knife on E.M.A., L.S.C., and D.E.L.S.  At Asprilla's direction, Ibarguen Palacios tied the wrists of L.S.C. and D.E.L.S. and threw them overboard but pulled them up so their heads were just above the water and anchored them with rope to the inside of the boat.  Asprilla and Ibarguen Palacios first took turns sexually assaulting E.M.A. and then killed her by cutting her throat.  Next, they brought D.E.L.S. back into the boat and then cut his throat, killing him.  While Asprilla and Ibarguen Palacios struggled with D.E.L.S., L.S.C. freed himself from his bindings, swam away from the vessel, and hid in the surrounding mangroves. Asprilla and Ibarguen Palacios tried to find L.S.C. in the mangroves but eventually abandoned their search.

A local fisherman discovered L.S.C. the next day.  L.S.C. directed the Colombian authorities to the location of the murders. There, the authorities retrieved the bodies of E.M.A. and D.E.L.S., which had their throats and stomachs cut open.  The bodies were tied together and submerged in the water.  L.S.C. also identified photographs of Rivera Weir, Ibarguen Palacios, Asprilla, and Valencia Palacios as the men who had agreed to smuggle the victims.  He specifically identified Ibarguen Palacios and  Asprilla as the men who raped and killed E.M.A. and killed D.E.L.S.

5

Just three days after the murders, Colombian law enforcement officials arrested Ibarguen Palacios and Asprilla at a hotel in Turbo, Colombia. The police recovered some of the victims' personal items in their hotel rooms, and discovered more of the victims' personal property, as well as the vessel used during the smuggling venture and a homemade firearm, in Ibarguen Palacios's home. Ibarguen Palacio and Asprilla pleaded guilty in Colombia to murder, rape, aggravated robbery, and femicide and were each sentenced to 43 years and 6 months in prison.

On January 6, 2017, a grand jury in the Southern District of Florida returned an indictment charging Asprilla with four counts: conspiracy to encourage and induce aliens to come and reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 1) and knowingly encouraging an alien to enter and reside in the United States in reckless disregard of the law in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (B)(iv), and (B)(iii) (Counts 2-4). Colombia extradited Ibarguen Palacios, Asprilla, and Valencia Palacios to the United States on November 9, 2017.[3] As part of the extradition agreement, the United States assured Colombia that Asprilla would not be sentenced to death or life imprisonment.

---

[3] Rivera Weir remains a fugitive.

6

On October 24, 2018, Asprilla pleaded guilty to all four counts. A United States probation officer prepared a Presentence Investigation Report ("PSI"). The PSI noted that Asprilla admitted that "he and Ibarguen had a plan to rob [the victims] because they were told by an unindicted conspirator that they had 'a lot' of money." Pursuant to § 2A1.1(a)—the first-degree murder guideline cross-referenced in § 2L1.1, the alien smuggling guideline—the probation officer assigned a base level of 43 for Asprilla's murder of E.M.A. and D.E.L.S. The probation officer increased Asprilla's offense level by two points under § 3A1.3 because a victim was physically restrained in the course of the offense. The probation officer then reduced Asprilla's offense level by two points for acceptance of responsibility under § 3E1.1(a) and issued another one-level reduction for assisting the authorities in the investigation of his own conduct under § 3E1.1(b). With a total offense level of 42 and a criminal history category of I, Asprilla's applicable guideline range was 360 months to life imprisonment.[4] The statutory maximum term of imprisonment was life.

---

[4] The probation officer noted that the court may consider an upward departure under § 5K2.8 because Asprilla's conduct was unusually heinous, cruel, brutal, or degrading to the victim. Specifically, the probation officer noted that Asprilla threw two victims overboard and anchored them to the boat with their head just above the water; that he raped and murdered E.M.A. and murdered D.E.L.S. by cutting their throats; and that Asprilla's guideline calculation did not account for the rape of E.M.A. Asprilla objected, stating that an upward departure was not warranted.

7

Asprilla made several written objections to the PSI. Relevant to this appeal, he objected to the cross-reference application of U.S.S.G. § 2A1.1—the first-degree murder guideline—and contended that his offense level should have been calculated pursuant to the cross-reference application of § 2A1.2—the second-degree murder guideline. Notably, however, he did not object to paragraph 18, which noted his admission that he intended to rob the victims.

Asprilla also filed a sentencing memorandum requesting a downward variance from the sentencing guidelines. He argued that a bottom of the guideline total sentence of 360 months combined with the sentence he had to serve in Colombia would be a *de facto* life sentence, and thus would violate the intent and spirit of the extradition agreement, as well as the Eighth Amendment's prohibition on unusual and cruel punishment.

Prior to sentencing, the government filed a memorandum in aid of sentencing, contending that the probation officer correctly calculated Asprilla's guideline range using § 2A1.1 through the § 2L1.1 cross-reference based on his relevant conduct. The government argued that the nature of Asprilla's offense conduct, his character, and the need to afford adequate deterrence and to protect the public made a 600-month total sentence reasonable.

At sentencing, the government argued that the cross-reference applied because Asprilla acted knowingly and willfully with knowledge, and that, although

8

"the murders were not premeditated in several days in advance," Asprilla "certainly [had] an opportunity for reflection and deliberation." In response, Asprilla adopted Ibarguen Palacios's argument that the two did not commit the murders in the context of an enumerated first-degree felony-murder offense as set forth in 18 U.S.C. § 1111. Rather, Aspirilla argued the murders were perpetrated in commission of an alien smuggling offense.[5] Asprilla further contended that the murders were not premeditated, but instead qualified as more of "a heat of passion, spur of the moment second degree kind of murder or homicide." The court overruled Asprilla's objection and concluded that the first-degree murder cross-reference applied.

The district court subsequently adopted the guideline calculation contained in the PSI and assigned a base offense level of 42. Asprilla reiterated his argument for a downward departure due to his sentence in Colombia. The court stated that it had considered "the statements of all the parties, the presentence report which contains the advisory guidelines and the statutory factors set forth in 18 U.S.C. § 3553(a)" and imposed concurrent 600-month sentences for each count, followed by 3 years of supervised release as to each count. Asprilla objected to the sentences and stated that he believed that the court failed to calculate the guidelines

---

[5] 18 U.S.C. § 1111 enumerates a list of offenses that qualify for a first-degree felony-murder. Alien smuggling is not one of them. *See generally* 18 U.S.C. § 1111.

9

correctly, relied on erroneous facts, and failed to adequately consider the § 3553 factors that he had mentioned in his motion for a downward variance. Asprilla timely appealed.

## II.    Discussion

Generally, this Court reviews the reasonableness of a sentence under the deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). In reviewing the reasonableness of a sentence, this Court conducts a two-step inquiry by first ensuring that there was no significant procedural error and then examining whether the sentence was substantively reasonable. *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009). The district court commits a significant procedural error if it calculates the guidelines incorrectly, fails to consider the § 3553(a) factors,[6] bases the sentence on clearly erroneous facts, neglects to explain the sentence, or treats the guidelines as mandatory rather than advisory. *Gall*, 552 U.S at 51.

---

[6] The factors a district court must consider are:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need "to reflect the seriousness of the offense;" (3) the need "to afford adequate deterrence to criminal conduct; (4) the need "to protect the public from further crimes of the defendant; (5) the need "to provide the defendant with . . . correctional treatment in the most effective manner;" (6)"the kinds of sentencing and the sentencing range established for the applicable category of offense;"  and (7) "any pertinent policy statement."

18 U.S.C.A. § 3533(a).

The party challenging the sentence bears the burden of demonstrating that the sentence is unreasonable in light of the record, the factors listed in 18 U.S.C. § 3553(a), and the substantial deference afforded sentencing courts. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). "In reviewing the reasonableness of a sentence, we must . . . consider the totality of the facts and circumstances." *United States v. Irey*, 612 F.3d 1160, 1189–90 (11th Cir. 2010) (*en banc*) (citing *United States v. Pugh*, 515 F.3d 1179, 1192 (11th Cir. 2008). We accept the district court's findings of facts unless they are clearly erroneous. *Irey*, 612 F.3d at 1190. Still, we should consider "additional salient facts that were elicited, and uncontroverted." *Pugh*, 515 F.3d at 1192.

We review the district court's factual findings for clear error and its application of the sentencing guidelines to those facts *de novo*, *see United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). In order to be clearly erroneous, the finding of the district court must leave this Court after a review of all the evidence with a "definite and firm conviction that a mistake has been committed." *United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015). However, a factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of the evidence. *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010) (citing *United States v. Izquierdo*, 448 F.3d 1269, 1278 (11th Cir. 2006)). The government is required to prove by a preponderance

11

of the evidence that an enhancement is applicable, *see United States v. Kinard*, 472

F.3d 1294, 1298 (11th Cir. 2006), and the defendant's relevant conduct.  *See*

*United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015).  The sentencing

court must consider all relevant conduct, as described in U.S.S.G. § 1B1.3, when

determining a defendant's sentence, which this Court reviews for clear error.

*United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2015).  Relevant

conduct is defined broadly and includes uncharged conduct that is proven by a

preponderance of the evidence at sentencing.  *Id.* at 1332.[7] If no party objects to

allegations of fact contained in a PSI, the fact is admitted for sentencing purposes.

*United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

> A. *Whether the district court imposed a procedurally unreasonable sentence*

Asprilla contends that the district court imposed a procedurally unreasonable

sentence because it failed to (1) grant a downward departure considering the

factors that took his case out of the heartland, (2) calculate properly his guideline

range by incorrectly applying the first degree murder enhancement to his alien

---

[7] The Sentencing Guidelines define relevant conduct to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction . . . or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A)-(B).

smuggling conviction, and (3) explain adequately its reasons for Asprilla's 600-months sentence.  We address each argument in turn.

### 1. *Downward Departure*

Asprilla first argues that the district court erred in not granting him a downward departure because his case was not a typical "heartland" case as he had already pleaded guilty to the same acts, and been sentenced, in Colombia.  But to the extent Asprilla seeks to appeal the denial of his motion for a downward departure, we lack jurisdiction to review a district court's decision to deny a motion for a downward departure where, as in this case, the district court merely exercised its discretion to deny the motion and was not operating under the mistaken belief that it lacked the authority to grant a departure.  *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006) ("We lack jurisdiction to review a district court's decision to deny a downward departure unless the district court incorrectly believed that it lacked authority to grant the departure.").

### 2. *Enhancement under § 2A1.1 pursuant to U.S.S.G. § 2L1.1(c)*

Asprilla's next claim on appeal is that the district court erred in applying a first-degree murder cross-reference at sentencing.  Asprilla was convicted of one count of conspiracy to encourage and induce aliens to enter the United States, resulting in death, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and three counts of encouraging and inducing aliens to enter the United States, resulting in death, in

13

violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (B)(iv), and (B)(iii). Accordingly, the district court sentenced him pursuant to U.S.S.G. § 2L1.1, which governs smuggling offenses. That guideline specifies that "[i]f death resulted," from the defendant's crime, courts should "apply the appropriate homicide guideline . . ." U.S.S.G. § 2L1.1(c)(1). Here, the district court chose to apply the first-degree murder guideline. The commentary to the first-degree murder sentencing guideline explains that it applies (1) "in cases of premeditated killing" and (2) "when death results from the commission of certain felonies" (the felony murder rule). U.S.S.G. § 2A.1.1, cmt. (n. 1). Section 2A1.1 incorporates 18 U.S.C. § 1111, the federal murder statute. In accordance with § 1111, those certain felonies include arson, kidnapping, aggravated sexual abuse or sexual abuse, burglary, and robbery. 18 U.S.C. § 1111.[8] Where, as here, the district court finds the cross-reference applies, the base offense level is 43. U.S.S.G. § 2A.1.1(a).

---

[8] 18 U.S.C. § 1111 defines first-degree murder as:

> [T]he unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Asprilla claims that the first-degree cross reference does not apply to him because he had not murdered E.M.A. and D.E.L.S with "malice aforethought" and because at the time of the murders, he was smuggling aliens, which is not a predicate felony for the felony murder rule.

His claims fail because Asprilla and Ibarguen Palacios killed E.M.A and D.E.L.S. during the perpetuation of a robbery and an aggravated sexual assault—both which are predicate felonies for the felony murder rule.  Carreazo Asprilla admitted that before they set out on the boat, he and Ibarguen Palacios planned to rob the victims.  And following their arrest, Colombian authorities found the victims' belongings in Ibarguen Palacios's and Carreazo Asprilla's hotel rooms, as well as Ibarguen Palacios's home.  With regard to the sexual assault, Asprilla readily participated in the rape of E.M.A. before he and Ibarguen Palacios murdered E.M.A. and D.E.L.S.  Moreover, Asprilla pleaded guilty to robbery and rape in Colombia.  Both robbery and rape are predicate felony offenses that qualify Asprilla's murders for first degree murder.  18 U.S.C. § 1111(a).

In applying the felony-murder cross reference, a district court is not limited to considering the crime with which the defendant was charged and convicted: "the Relevant Conduct provision [of the sentencing guidelines] directs a court to sentence a defendant for uncharged conduct germane to the charge-offense by authorizing it to consider events before, during, and after the offense conduct."

15

*United States v. Ritsema*, 31 F.3d 559, 566 (7th Cir.1994); *see also United States v. Behr*, 93 F.3d 764, 765 (11th Cir. 1996) ("This Court broadly interprets the provisions of the relevant conduct guideline.")  Before the murders, Asprilla and Ibarguen Palacios raped E.M.A.  After the murders, they robbed the victims.  Asprilla's failure to object to these contentions—that he and Ibarguen Palacios planned to (and did) rob the victims, that he participated in the sexual assault and murder of E.M.A., and that he participated in the murder of D.E.L.S.—permitted the district court to properly admit them for sentencing purposes.  *See Wade*, 458 F.3d at 1277.  Because the evidence supports the district court's finding that Asprilla engaged in predicate offenses for the felony-murder rule—robbery and sexual assault—when he murdered the victims, the district court correctly applied the first-degree murder cross reference.

### 3. *Sufficiency of Sentencing Explanation*

Asprilla argues that the district court did not adequately explain its sentence, specifically its consideration of his already-imposed Colombian sentence of 527-months.  Asprilla, however, failed to object to the district court's explanation in imposing his total 600-month sentence, and brought this claim for the first time on

16

appeal,[9] and thus we review his claim for plain error.[10] *See United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014).

A sentencing court does not have to state every factor it relies upon: in explaining the reasons for the sentence it imposes, the district court judge "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007); *United States v. Agbai*, 497 F.3d 1226, 1230 (11th Cir. 2007). However, the amount of necessary detail "depends upon circumstances" and even brief statements of reason are sufficient if supported from the context and record underlying the district court's decision. *Rita*, 551 U.S. at 356–58 (stating that the context and record supported the sentence because the record made clear that the judge listened to all the arguments, considered all supporting evidence, and was fully aware of defendant's

---

[9] The district court, while not explicitly mentioning the Colombian sentence in its ultimate sentencing remarks, did engage in an extensive exchange with Asprilla and the government as to the merits of a possible departure due to the Colombian sentence. This exchange, however, does not constitute an objection to the sufficiency of the sentencing *explanation* (a procedural claim as opposed to a substantive claim). *Gall v. United States*, 552 U.S. 38, 51 (2007) (stating that a sentence is procedurally unreasonable if the district court "fail[s] to adequately explain the chosen sentence.").

[10] Under plain error review, this court may consider exercising its discretion to correct an error where the defendant demonstrates: (1) an error occurred; (2) the error was plain; and (3) the error affects substantial rights. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018). When these three factors are met, this court should exercise its discretion and correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1905 (quotation marks omitted).

17

special condition and work history); *see also United States v. Irey*, 612 F.3d 1160, 1194–95 (11th Cir. 2010) (*en banc*) (holding there is no requirement for more "detailed findings" or "more thorough explanation" when the record demonstrates that "the judge listened to evidence and arguments and was aware of the various factors the defendant put forward for a lower sentence").

Here, the district court did not err in explaining Asprilla's total sentence. Before imposing his total sentence, the district court specifically stated that it "considered the statement of the parties, the presentence report which contains the advisory guidelines, and the statutory factors as set forth in 18 USC Section 3353(a)." Our review of the record confirms that the district court took these considerations into account: (1) the district court had numerous exchanges with the parties regarding elements of the crime, Asprilla's involvement in the crime, possible departure due to the sentence already imposed in Colombia, and a statement from the Asprilla himself; (2) the district court engaged in a thorough review of the PSI and Asprilla's objections on the record; (3) lastly, the district judge considered the § 3553(a) factors—thus the district court's explanation was sufficient. *Irey*, 612 F.3d at 1194-95. Accordingly, Asprilla's total sentence is not procedurally unreasonable.

### B. Whether the district court imposed a substantively unreasonable sentence

18

Asprilla argues that district court did not give proper weight to the sentencing factors, specifically that he had already been sentenced in a foreign jurisdiction to 527-months.  Asprilla, however, has not pointed to any precedent or authority establishing that a district court must give weight and consideration—and if it fails to do so the sentence is substantively unreasonable—to a sentence imposed by a foreign jurisdiction for a different crime in computing its sentence. Regardless, the district court did not impose a substantively unreasonable sentence.

A district court abuses its considerable discretion and imposes a substantively unreasonable sentence when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *Irey,* 612 F.3d at 1189 (quotation marks omitted). Because only a "rare sentence" will be substantively unreasonable, the party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (citing *United States v. McQueen,* 727 F.3d 1144, 1156 (11th Cir. 2013)).

The 600-month sentence is not substantively unreasonable.  The district court considered the statutory Section 3553(a) factors at sentencing: it highlighted

19

the seriousness of Asprilla's "horrible crime," the importance and deterrence for the law, and the dangers of alien smuggling. 28 U.S.C. § 3553(a)(1)–(2), 4; *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (noting that the district court has discretion to give different weights to specific § 3553(a) factors). The court then considered the guidelines range and imposed a sentence within the guidelines range (360 months to life) and below the statutory maximum (life). *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (stating that this court ordinarily expects a sentence within the guidelines range to be reasonable); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (stating that a sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence). Thus, considering the totality of the circumstances and the district court's consideration of the § 3553(a) factors and sentencing guidelines, we give "substantial deference" to the district court and determine that it did not abuse its discretion in imposing Asprilla's sentence. *Rosales-Bruno*, 789 F.3d at 1256.

We conclude that Asprilla's sentence was not procedurally or substantively unreasonable, and we affirm.

**AFFIRMED.**