[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12295
Non-Argument Calendar

_____

D.C. Docket No. 8:17-CR-00409-VMC-JSS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES ROBERT GREGG, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 9, 2019)

Before JORDAN, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

James Robert Gregg appeals his conviction for receiving and possessing child

pornography in violation of 18 U.S.C. § 2252(a)(2) & (b)(1) and 18 U.S.C.

§2252(a)(4)(B) & (b)(2), respectively.  He alleges error in the denial of his motion to suppress evidence obtained from a search of his cell phone and the denial of a one-level sentencing reduction under U.S.S.G. § 3E1.1(b).    After careful consideration of the record and the parties' briefs, we affirm.

## I

Mr. Gregg's arrest and subsequent conviction stem from an investigation initiated by Homeland Security Investigations in October of 2015 into an internet-based video conferencing application that was being used for sharing and viewing child pornography.  The application enables people to join virtual rooms, in which participants can view each other via webcam and share images or videos from their personal computer desktops.  The videos, images, and live content are represented as small tiles on each user's display, which can be enlarged for viewing by any individual in the room.  No one user can see what any other user is viewing at a given time, but their user names are displayed, and they can communicate with one another via a chat function in the application.

In the course of the investigation, Special Agent Austin Berrier obtained and compiled detailed information about users who visited rooms where child pornography was shared, including their Internet Protocol ("IP") addresses, the dates, frequency, and cumulative time spent visiting the rooms, the identification number of each room visited, and the name of the user's Internet Service Provider

("ISP"). An individual with the user name "fla," was observed in different rooms livestreaming himself engaged in self-stimulation while child pornography was available for viewing. Agent Berrier established that the user name "fla" was connected to an ISP address in the Middle District of Florida and forwarded the information he compiled to HSI Special Agent Tavey Garcia in Tampa, Florida, on September 23, 2016.

On September 30, 2016, Agent Garcia and another agent visited the apartment associated with the IP address. Mr. Gregg resided there with his girlfriend, Allison Anderson, their young daughter, and Ms. Anderson's teenage son. The agents interviewed Mr. Gregg, who ultimately conceded that he had incidentally viewed child pornography while searching for material involving adult men. He told Agent Garcia that he accessed the application from his laptop, and consented to an inspection of the laptop. No child pornography was found, and the agents departed without arresting Mr. Gregg.

In late October of 2016, Agent Garcia spoke with Ms. Anderson, who said Mr. Gregg had moved out of the apartment several weeks earlier, leaving behind many belongings, including a cell phone and tablet. She said the laptop belonged to her and was used mostly for work, and that Mr. Gregg used the phone and tablet. She offered to turn both over, and they arranged to meet the following day. Agent Garcia showed Ms. Anderson screenshots from the application of the user "fla" and

Ms. Anderson confirmed that it was Mr. Gregg and that he appeared to be in the living room of their apartment.  On October 26, 2016, Ms. Anderson gave the cell phone and tablet to Agent Garcia and told her that Mr. Gregg had always had them on him, but the phone had broken months earlier and he began using a new one.

After the meeting, Agent Garcia began preparing a warrant application to search the cell phone and tablet.  Over one month later, on December 6, 2016, Agent Garcia submitted an affidavit and application to a United States magistrate judge for a warrant to search Mr. Gregg's cell phone and tablet.  The magistrate signed the warrant on December 7, 2016, and it was executed the following day.

On August 23, 2017, a grand jury indicted Mr. Gregg on one count of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) & (b)(1), and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  Mr. Gregg filed a motion to suppress evidence obtained through the search of his cell phone.

In the suppression hearing before a magistrate judge, Ms. Anderson testified about the events that led up to Mr. Gregg moving out of the apartment and about her access to his cell phone, both before and after he left.  When they lived together, Mr. Gregg had never prohibited her from using his phone or said anything that made her believe she could not use it, although she never used the phone.  When the phone broke, Mr. Gregg obtained a new one and placed the broken phone in his bedside

4

drawer.  When Ms. Anderson learned about the investigation, she told Mr. Gregg to move out and made him leave his key behind.  He packed a small duffel bag of his belongings and left, taking his new cell phone but leaving the broken one in the bedside drawer.

Ms. Anderson also testified that, after he moved out, Mr. Gregg did not try to retrieve the rest of his belongings and did not ask her to return his old cell phone or tablet.  She said that she had asked him to take the rest of his things out of the apartment and he said that he would, but never scheduled a time to do so.  When he returned in November to collect his belongings, Mr. Gregg did not ask about his cell phone or tablet but was upset when she told him that she had given them to Agent Garcia.  He asked her why she had turned the devices over but did not question her authority to do so.  Ms. Anderson gave him Agent Garcia's phone number and told him to direct any of his questions to her.  Ms. Anderson said that she had communicated with Mr. Gregg in the following days, but he never mentioned the phone and tablet again.

The magistrate judge recommended denial of Mr. Gregg's motion to suppress, concluding in relevant part that Mr. Gregg had abandoned his cell phone and tablet and therefore did not have an expectation of privacy in them.  The district court adopted the magistrate judge's report in its entirety, over Mr. Gregg's objections.

Mr. Gregg entered a waiver of his right to trial by jury and a notice of stipulated facts for a bench trial.   The bench trial resulted in a guilty verdict and the district court sentenced Mr. Gregg to 168 months' imprisonment and 20 years of supervised release.   Mr. Gregg sought a one-level downward adjustment to his sentence for acceptance of responsibility under U.S.S.G. § 3E1.1, which the district court denied on the grounds that such a request must be initiated by the government. The judgment and sentence were entered on May 30, 2018, and Mr. Gregg filed this timely appeal.[1]

## II

The district court denied Mr. Gregg's motion to suppress evidence recovered from his cell phone, finding that he lacked standing to challenge the search because he had abandoned the phone when he moved out of the apartment and made no subsequent effort to recover it.   We affirm.[2]

---

[1] Mr. Gregg stipulated in the bench trial that more than 150 images of child pornography and 70 videos involving child pornography were found on his cell phone.  He also stipulated that agents had found several downloaded applications, one of which was associated with the username "jimmythulu."   He stipulated that he used that online persona and that "jimmythulu" had sent Dropbox, video, and image links to other chat participants.  Communications between that user name and other participants indicated that they were sending and receiving images and videos of child pornography.   He admitted that he had obtained or viewed child pornography via the application and via the Kik Messenger Service.

[2] Mr. Gregg raises several other claims that were argued before the district court, including (1) that Ms. Anderson lacked authority to consent to the search of the cell phone; (2) that law enforcement's 42-day delay between the seizing the cell phone and obtaining the warrant unreasonably interfered with his possessory interests; (3) that the warrant was unsupported by probable cause; and (4) that the "good faith" exception would not apply to justify the unlawful search.  Because we affirm the district court's finding that Mr. Gregg abandoned the cell phone, we need not consider his remaining arguments.

"We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact, with rulings of law reviewed de novo and findings of fact reviewed for clear error, in the light most favorable to the prevailing party in district court." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). "Because the issue of abandonment 'involves a factual issue,' a district court's finding of abandonment is reviewed under the clearly erroneous standard." *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994) (citation omitted).

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. These protections extend to cellular phones. *See Riley v. California*, 573 U.S. 373, 386 (2014). To have standing to challenge the search of a cell phone, a defendant bears the burden of establishing "both a subjective and an objective expectation of privacy" in its contents. *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006). But a person lacks Fourth Amendment standing to challenge the "search or seizure of property that he has voluntarily abandoned." *United States v. Sparks*, 806 F.3d 1323, 1341 (11th Cir. 2018). To determine whether property has been abandoned, we ask whether the individual "voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."

*Ramos*, 12 F.3d at 1022 (11th Cir. 1994).  This is a "question of intent which may be inferred from acts, words, and other objective facts."  *Id.* at 1022–23.

Mr. Gregg primarily relies on *United States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015), to support the assertion that his devices were never abandoned.  In *Sparks*, two defendants moved to suppress evidence of child pornography obtained from the search of a phone they lost in a Walmart store.  A store employee found it and called the number left in a text message on the phone seeking its return.  The defendants arranged for the return of the phone, but in the interim, the employee discovered what appeared to be pornographic images of a very young child.  She confirmed the questionable nature of the photos with another employee, who submitted the phone to the police.  We held that the defendants had abandoned the phone because, despite initially trying to retrieve it, they very quickly ceased those efforts even though it would have been easy to do so, obtained new phones within a few days, and filed an insurance claim for the lost phone.  *See id.* at 1349.

In *Ramos*, by contrast, we held that the defendant retained full interest in his property where, after he failed to timely vacate a rented room at the end of the lease term, a cleaning company prepping the room for the next tenant packed his belongings into garbage bags pursuant to the management company's policy.  *See Ramos*, 12 F.3d at 1026.  The cleaners spotted apparent drug paraphernalia in the room and inside a partially closed and locked briefcase.  They contacted the police,

8

who obtained positive results from a field test on a powdery substance found inside the case. They obtained a warrant to expand the search of the defendant's room. We held that the property was not abandoned because the defendant had retained a key to the unit where everything was stored and had called the management company the next day to try and recover his belongings. Moreover, the search occurred on the same day and within a few hours of when the government alleged he had abandoned his property. *See id.*

The facts of Mr. Gregg's case fall somewhat between those of *Sparks* and *Ramos*. Like the defendants in *Sparks*, Mr. Gregg's devices were left in a known location and in the control of a person with whom he could readily communicate. And, also like the defendants in *Sparks*, Mr. Gregg did not take advantage of any opportunity to retrieve the devices, although it would have been relatively easy to do so. Mr. Gregg's case bears one similarity to *Ramos* in that there is some evidence that Ms. Anderson and Mr. Gregg shared at least an initial understanding that he had not fully abandoned the property he left behind. Indeed, Ms. Anderson bagged everything up and told Mr. Gregg to collect it at a later date. She also told Agent Garcia that Mr. Gregg intended to get his property later. **[Doc. 35-2 at 10–11]** But unlike the defendant in *Ramos*, Mr. Gregg did not retain a key to the premises and took no affirmative steps—for several weeks—towards retrieving any of his belongings, despite Ms. Anderson's requests for him to do so. Even if Mr. Gregg

9

possessed an initial subjective belief that he had not abandoned his property, his subsequent actions were consistent with abandonment.

On this record, we hold that the district court did not err in finding that Mr. Gregg abandoned his cell phone. *See Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017) (explaining the clear error standard). Thus, it was not error to hold that Mr. Gregg lacked standing to contest the constitutionality of the phone's subsequent acquisition and search by police.

### III

Mr. Gregg also argues that the district court erred in denying him an additional one-level reduction for acceptance of responsibility. The Sentencing Guidelines permit a one-level reduction of a sentence pursuant to § 3E1.1(b) if, among other conditions, "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial," a § 3E1.1(b) reduction may only be granted upon the government's motion at sentencing. U.S.S.G. § 3E1.1(b), cmt. n.6. *See also United States v. Wade*, 458 F.3d 1273, 1282 (11th Cir. 2006). This principle is subject to the limitation in Amendment 775 to §

10

3E1.1(b), which provides that "[t]he government should not withhold [a § 3E1.1(b) motion] based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." U.S.S.G. § 3E1.1(b) cmt. 6.  Because the sentencing court is in a unique position to determine whether a defendant has accepted responsibility, we review such determinations for clear error and with great deference.  *See United States v. McPhee*, 108 F.3d 287, 289 (11th Cir. 1997).  *See also* U.S.S.G. § 3E1.1(b), cmt. n.5.

Citing to case law from other circuits, Mr. Gregg argues that a § 3E1.1(b) reduction may not be withheld solely because the defendant moved for suppression of evidence.  The government explains that it declined to move for a § 3E1.1(b) reduction in part because of the "significant resources" expended in the litigation of the suppression motion, but also because it engaged in trial preparation during the three weeks between the district court's denial of the suppression motion and when Mr. Gregg agreed to stipulate to facts for the bench trial.  Given the deference we afford the district court and the government to assess whether a § 3E1.1(b) reduction is warranted, we see no reason to question the result here.

## IV

For the foregoing reasons, we affirm.

**AFFIRMED.**

11