[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10665

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LEONEL GARCIA CABEZA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20383-KMM-3

_____

2                    Opinion of the Court                    22-10665

_____

No. 22-10691

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ENER CORTES RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20383-KMM-2

_____

_____

No. 22-10703

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

PABLO GUERRERO MARQUEZ,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20383-KMM-1

_____

Before LAGOA, BRASHER and DUBINA, Circuit Judges.

PER CURIAM:

In this consolidated appeal, codefendants Leonel Garcia Cabeza, Ener Cortes Rodriguez, and Pablo Guerrero Marquez each appeal their convictions after pleading guilty to conspiracy to possess with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States. They also appeal their respective 135-month imprisonment sentences, arguing they are substantively unreasonable. On appeal, the codefendants argue that the government failed to satisfy the jurisdictional requirement under the Maritime Drug Law Enforcement Act ("MDLEA") of

establishing that their vessel was without nationality because the facts proffered in support of their guilty pleas did not establish that the Coast Guard asked for the master or person in charge to make a claim of nationality or that they were silent in response to such a request. Further, they each argue that their sentences were substantively unreasonable because they did not account for their respective history and characteristics, their role in the offense, or the need to avoid unwarranted sentencing disparities. After reviewing the record and reading the parties' briefs, we affirm the defendants' convictions and sentences.

I.

We review whether the district court had jurisdiction *de novo*, even when a party raises the jurisdictional question for the first time on appeal, and review factual findings related to jurisdiction for clear error. *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016).

Under the MDLEA, the question of whether a vessel is subject to the jurisdiction of the United States is a jurisdictional question, and not an element of the offense. *Id.* Jurisdictional issues under the MDLEA "are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). "Furthermore, for a district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in subsection (a), the Government must preliminarily show that the conspiracy's vessel was, when apprehended, subject to the jurisdiction of the United States." *United States v. De La Garza*, 516

F.3d 1266, 1272 (11th Cir. 2008) (quotation marks omitted).  We have treated the jurisdictional requirement under the MDLEA as "akin to the amount-in-controversy requirement contained in 28 U.S.C. § 1332."  *Id.* at 1271.  Parties may stipulate to facts that support a jurisdictional finding but may not stipulate to jurisdiction.  *Iguaran*, 821 F.3d at 1337.  "[F]ailure to object to allegations of fact in a [presentence investigation report ("PSI")] admits those facts for sentencing purposes."  *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

The MDLEA makes it a crime to conspire to distribute a controlled substance while on board a vessel subject to the jurisdiction of the United States. 46 U.S.C. §§ 70503(a)(1), 70506(b).  The MDLEA's definition of a "vessel subject to the jurisdiction of the United States" includes a "vessel without nationality."  *Id.* § 70502(c)(1)(A).  Under the MDLEA,

> the term "vessel without nationality" includes—
>
> (A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
>
> (B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel;
>
> (C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and

unequivocally assert that the vessel is of its national-
ity; and

(D) a vessel aboard which no individual, on request of
an officer of the United States authorized to enforce
applicable provisions of United States law, claims to
be the master or is identified as the individual in
charge, and that has no other claim of nationality or
registry under paragraph (1) or (2) of subsection (e).

*Id.* § 70502(d)(1). With regard to a claim of nationality or registry,
the MDLEA further provides that:

A claim of nationality or registry under this section
includes only—

(1) possession on board the vessel and production of
documents evidencing the vessel's nationality as pro-
vided in article 5 of the 1958 Convention on the High
Seas;

(2) flying its nation's ensign or flag; or

(3) a verbal claim of nationality or registry by the
master or individual in charge of the vessel.

*Id.* § 70502(e).

We have held that § 70502(d)(1) is not an exhaustive list of
every circumstance in which a vessel lacks nationality. *United States
v. Nunez*, 1 F.4th 976, 984 (11th Cir. 2021), *cert. denied*, ___ U.S. ___,
142 S. Ct. 2675 (2022). To determine whether a vessel is without
nationality, we look to customary international law. *Id.* In *Nunez*,
we noted that a vessel usually makes its nationality known by flying
a nation's flag or carrying registration papers. *Id.* at 985. When a

vessel does not have those common signs of nationality, we look to § 70502(e) and international law. *Id.*

In determining whether a vessel is stateless, we have held that a vessel was subject to the United States's jurisdiction under § 70502(d)(1)(B) where it "flew no flag, carried no registration paperwork, and bore no markings indicating its nationality"; despite repeated questioning, the captain concealed himself among the crew and failed to identify himself or the vessel's nationality; and the crew, when questioned, "made no claims about the boat's nationality or registry." *United States v. De La Cruz*, 443 F.3d 830, 832 (11th Cir. 2006). Similarly, in *De La Garza*, we held that the vessel was stateless because the defendant stipulated that the vessel was not flying any flag and had no indicia of nationality and indicated at his plea hearing that he understood that the United States claimed jurisdiction over the vessel and wished to plead guilty. 516 F.3d at 1272.

Likewise, in *United States v. Cabezas-Montano*, we held that a vessel was subject to the jurisdiction of the United States where the Coast Guard members testified that they asked the crew to identify the master of the vessel and no one identified himself as the master and when asked individually if anyone wished to make a claim of nationality for the vessel, no one responded. 949 F.3d 567, 589-90 (11th Cir. 2020). We noted that the questions were sufficient, even though the Coast Guard failed to ask for the "individual in charge," because that individual still had an opportunity to make a claim of

nationality for the vessel when the Coast Guard asked if anyone wished to do so. *Id*. at 589 n.14.

In *Iguaran*, the plea agreement, factual proffer, and PSI all contained the same stipulation that Iguaran was "on board a vessel that was subject to the jurisdiction of the United States." 821 F.3d at 1337 (quotation marks omitted). We stated that the stipulation was not sufficient to establish jurisdiction because parties may not stipulate to jurisdiction, which is a question of law. *Id*. We stated that Iguaran's plea agreement did not otherwise contain facts that would support a finding that the vessel was stateless. *Id*. We determined that "Iguaran's factual proffer, his presentence investigation report, and the transcript from his change of plea hearing also failed to supply facts which established that Iguaran's vessel was subject to the jurisdiction of the United States." *Id*. Even though Iguaran's co-conspirator admitted to facts that would support a finding that the vessel was stateless, we held that the record in the co-conspirator's case was irrelevant to whether Iguaran's record sufficiently established the United States' jurisdiction over the vessel. *Id*. at 1337-38. When the record is not fully developed, at least in part because of the defendant's failure to raise the issue below, we will remand the case to the district court for further factual findings. *Id*. at 1338. Accordingly, we remanded the case to allow the government to provide evidence that Iguaran's vessel was subject to the jurisdiction of the United States. *Id*.

In *Nunez*, the Coast Guard approached a vessel with four men on board and asked who was the pilot or master of the vessel.

22-10665                 Opinion of the Court                 9

1 F.4th at 981.  One crew member responded that they all took turns performing the duties of the pilot or master.  *Id.*  We noted that because no one claimed to be the master of the vessel, the Coast Guard was not required to inquire as to the nationality of the vessel.  *Id.* at 986.  We held that the vessel was stateless because there were no registry papers on board, there were no markings to indicate the nationality of the vessel, and no one, master or crew-member, made a verbal claim of the vessel's nationality.  *Id.*  We noted that under international law, there are no set standards for what questions authorities must ask to determine whether a vessel is stateless.  *Id.* at 987.  We also noted that typically there is some form of examination by authorities to determine a vessel's nationality, but that international treaties do not address how to treat a vessel without a master and no nationality markings.  *Id.*

The record in the present case demonstrates that Garcia Cabeza, Cortes Rodriguez, and Guerrero Marquez admitted in their respective factual proffers and PSIs that the vessel had no indicia of nationality and none of the men on board claimed to be the master or captain of the vessel, which relieved the Coast Guard of having to confirm the nationality of the vessel.  *See Nunez*, 1 F.4th at 986.  Under our precedent, those facts were sufficient to establish that the vessel was stateless for purposes of subject matter jurisdiction.  Accordingly, because we conclude that the district court had jurisdiction over the defendants, we affirm their convictions.

II.

When reviewing a sentence for substantive reasonableness, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). A district court abuses its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). We will vacate a sentence "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation marks omitted). The district court commits a clear error of judgment when it considers the proper factors but weighs them unreasonably. *Id.* at 1189.

We have emphasized that we must give due deference to the weight the district court assigns to the sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018). The district court need not account for every § 3553(a) factor, nor must it discuss each factor and the role that that factor played in sentencing. *United States v. McBride*, 511 F.3d 1293, 1297 (11th Cir. 2007). The district court also does not have to give all the factors equal weight, and we give discretion to the district court's attachment of great

weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

Along with the § 3553(a) factors, the district court should also consider the particularized facts of the case and the guideline range. *Id.* at 1259-60. However, it maintains discretion to give heavier weight to any of the § 3553(a) factors or combination of factors than to the guideline range. *Id.* at 1259. The "district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining § 3553(a) factors that the court must also consider." *United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006). Indicators of a reasonable sentence are the district court's imposition of a sentence within the guideline range, and its imposition of a sentence well below the statutory maximum penalty. *United States v. Croteau*, 819 F.3d 1293, 1309-10 (11th Cir. 2016).

One of the purposes of the Guidelines is providing certainty and fairness in sentencing, and "avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." *United States v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009) (quotation marks omitted). Although we have never stated what the defendant's burden is in these contexts, we have noted that the district court is required to avoid the unwarranted disparities between similarly situated defendants, indicating that the court should be aware of any potential for this issue at sentencing. *See id.* at 1101-02. As the Sentencing Commission considered the need to avoid unwarranted sentencing

disparities when crafting the Guidelines, the district court necessarily gives significant weight and consideration to this factor by correctly calculating and considering the guideline range. *United States v. Hill*, 643 F.3d 807, 884-85 (11th Cir. 2011).

The record here demonstrates that the district court did not err in its imposition of the defendants' sentences. Garcia Cabeza's sentence is reasonable because the district court did not commit a clear error in judgment in determining that a sentence at the low-end of the guideline range was warranted after weighing the large quantity of cocaine possessed, Garcia Cabeza's poor upbringing, his position in the drug enterprise, and the need to avoid unwarranted sentencing disparities. Cortes Rodriguez's sentence is also reasonable because the district court was within its discretion in determining that his poor upbringing did not justify a variance, that the guideline range adequately accounted for the quantity of cocaine on the vessel, and that a guideline sentence would avoid unwarranted sentencing disparities. Finally, Guerrero Marquez's sentence is reasonable because the district court properly exercised its discretion in determining that the amount of cocaine on the vessel outweighed his personal history and that the guideline range adequately reflected the seriousness of the offense. Accordingly, based on the aforementioned reasons, we affirm the defendants' convictions and sentences.

**AFFIRMED.**