[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-13332

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSHUA SCOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:18-cr-00033-TES-CHW-1

_____

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Joshua Scott appeals his 24-month prison sentence imposed upon the revocation of his supervised release. He argues that his sentence is substantively unreasonable because the district court based its decision on an inaccurate understanding of his conduct and did not adequately consider the 18 U.S.C. § 3553(a) sentencing factors. After careful review, we affirm.

## I.

In 2018, Scott pled guilty to unlawful possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). According to unobjected-to facts in the presentence investigation report ("PSR"), Scott pointed a 12-gauge shotgun at his wife and threatened to kill her following a parenting disagreement. The district court sentenced Scott to serve 63 months in prison followed by two years of supervised release.

Scott was released from prison in December 2022 and began serving his term of supervised release. In October 2023, Scott was found in possession of his mother's handgun, and a probation officer later petitioned to revoke his supervised release. According to the petition, Scott's mother called the police and advised that Scott had taken her gun and would not return it. Upon searching Scott's bedroom, officers found a gun, ammunition, and a pipe with white residue in it. While Scott was being processed at jail, in front of two deputies, he "stated he planned on killing his mother." The revocation petition alleged that Scott violated the conditions of his

release by possessing a gun and ammunition, and by committing the offenses of theft, terroristic threats, and possession of drug-related objects.

Before the final hearing, the probation officer prepared a revocation report for the district court's benefit, akin to a PSR before sentencing. The report recounted the factual statements that the revocation petition made, including Scott's statement that "he had planned on killing his mother." The report also classified the severity of Scott's alleged violations. An initial report found that the alleged-terroristic-threats offense was a Grade A violation. But a revised report later calculated the guideline range based on a Grade B violation and a criminal history category of IV. Thus, the recommended guideline range was 12 to 18 months.

At the revocation hearing, Scott admitted to violating his supervised release by possessing a gun. The government agreed with Scott that "[a]ll the other counts will be dismissed." Based on Scott's admission, the court revoked his supervised release.

Turning to sentencing, the district court explained that the parties and the probation officer agreed the guideline range was 12 to 18 months based on a Grade B violation and a criminal-history category of IV. The court thought that the case may have involved a "Grade A" violation, but it conceded it had "been wrong many, many times," and it ultimately adopted the revocation report's guideline range of 12 to 18 months.

The government asked for an above-guideline sentence, citing Scott's "violent criminal history," his possession of a firearm

not long after his release, and "the other acts that occurred along with the possession of a firearm." Scott asked for a sentence of one year and one day, stating that he lived with his mother in a dangerous neighborhood and that she had given him a gun to protect the household.

The district court found that the guideline range of 12 to 18 months, which it had taken "under advisement," was "insufficient given the facts of this case and the individual characteristics" Scott had shown. The court found it "terribly disturbing" that Scott's underlying offense involved his "point[ing] a shotgun" at his wife, while "[n]ow we've got you again having a gun, knowing you're not supposed to have a gun, and . . . according to the police reports threatened to kill your mother." The court emphasized that Scott "can't have a gun." But even if Scott possessed the weapon for protection because he lived in a dangerous neighborhood, the court explained, Scott was "not smart about it." Finally, noting that it had imposed a below-guideline sentence in 2018, the court expressed frustration that Scott had returned to criminal activity not long after getting out of prison: "You've been given a break before. You won't take the break. You weren't on supervised release long, and this is what you do."

For these reasons, the district court exercised its discretion to vary upward based on the § 3553(a) factors, citing in particular the "nature and the circumstances of the violations and the need for the sentence imposed to afford adequate deterrence to criminal behavior." The court imposed the statutory maximum sentence of

24-13332              Opinion of the Court                    5

24 months' imprisonment, with no supervision to follow. Scott objected to "substantive reasonableness," and he now appeals.

**II.**

We review for reasonableness a district court's sentence imposed following a revocation of supervised release. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). We review the substantive reasonableness of a sentence for abuse of discretion under the totality of the circumstances. *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023).

In making its sentencing decisions, a district court may rely on undisputed statements in a presentence report. *United States v. Davis*, 587 F.3d 1300, 1303 (11th Cir. 2009). In this circuit, "a failure to object to allegations of fact in a [presentence report] admits those facts for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

Where, as here, a defendant on supervised release possesses a firearm, "the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under [§ 3583](e)(3)." 18 U.S.C. § 3583(g)(2). The maximum term authorized here is two years. *See id.* §§ 3583(e)(3), 3559, 924(a)(2). Before imposing sentence, the court must consider the guideline range, and it may consider the 18 U.S.C. § 3553(a) factors, even if "the statute does not *require* consideration" of those factors when revocation is mandatory. *United States v. Brown*, 224 F.3d 1237, 1241

(11th Cir. 2000) (quotation marks omitted), *abrogated in part on other grounds by Tapia v. United States*, 564 U.S. 319, 332 (2011).

Where a district court varies upward from the guideline range based on the § 3553(a) factors, it must have a justification compelling enough to support the degree of variance. *United States v. Grushko*, 50 F.4th 1, 20 (11th Cir. 2022). But we "do not presume that a sentence outside the guidelines range is unreasonable and we must give due deference to the district court's decision that the § 3553(a) factors support its chosen sentence." *Oudomsine*, 57 F.4th at 1267. We will vacate a sentence as substantively unreasonable only if the court made "a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1266 (quotation marks omitted).

Here, Scott has not shown that the district court abused its considerable discretion by imposing the maximum revocation sentence of 24 months' imprisonment. While the court was required to consider the guideline range of 12 to 18 months, *Brown*, 224 F.3d at 1241, it "ha[d] the discretion to impose a sentence outside the guideline range," *Grushko*, 50 F.4th at 20. And the court explained why, in its view, the § 3553(a) factors warranted a sentence above that range. The court found it "disturbing" that Scott had possessed a gun and said he planned to kill his mother, with whom he lived, not long after his release from prison for the underlying offense, which involved Scott's "point[ing] [of] a shotgun" at his wife. Because Scott did not object to these factual statements in the PSR

and revocation report, the court was permitted to consider them for purposes of sentencing. *See Davis*, 587 F.3d at 1303; *Wade*, 458 F.3d at 1277. And based on this undisputed conduct, we cannot say it was unreasonable for the court to conclude that an upward variance was necessary given Scott's history and characteristics and the need for the sentence to afford adequate deterrence.

Scott's arguments in response are unconvincing. He contends that the district court misunderstood the severity of the violation. But at the same time, he admits that "the guideline calculations were technically correct." We see no error. And while the court made references to brandishing and bragging about guns, these statements appeared to be purely hypothetical, not an indication that the court mistakenly believed that Scott brandished or bragged about the gun he possessed in October 2023 (although of course, the underlying § 922(g)(1) offense involved brandishing a shotgun). Finally, it was not unreasonable for the court to describe its prior discretionary downward departure as giving Scott a "break," even if Scott disagrees with that description.

In sum, we affirm Scott's 24-month revocation sentence.

**AFFIRMED.**